OLD KENT BANK, Plaintiff-Appellee and Cross-Appellant, v. RUSSELL STOLLER, Defendant-Appellant and Cross-Appellee.

First District (5th Division) No. 1—92—2520

Opinion filed September 30, 1993.

Seymour Simon, of Rudnick & Wolfe, of Chicago, for appellant.

Mary Anne Gerstner and John W. Gerstner, both of Law Offices of John W. Gerstner, of Chicago, for appellee.

JUSTICE MURRAY delivered the opinion of the court:

Defendant Russell Stoller (Stoller) appeals from two attachment orders entered by the circuit court on June 19, 1992, and June 23, 1992, which attached his beneficial interest in the Harris Trust and Savings Bank land trust No. 43429. He seeks to have the orders vacated and quashed as erroneously entered. Plaintiff Old Kent Bank (Old Kent), which originally instituted proceedings against Stoller based on a promissory note, urges this court's affirmance of the attachment orders, but also cross-appeals the circuit court's finding under Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)), that there was no just reason for delaying enforcement or appeal. Old Kent contends that the attachment orders are nonfinal and nonappealable despite the addition of Supreme Court Rule 304(a) language and that the appeal should be dismissed.

We believe the background in this case is pertinent and so we recount the rather lengthy details here.

On July 24, 1989, Old Kent filed a verified complaint alleging that Chestnut Industries, Inc., had defaulted on the payment of a promissory note it executed on December 7, 1987, in the principal amount of $120,000 and which was secured by Stoller under a personal guaranty of the indebtedness of Chestnut Industries, Inc., which was executed by Stoller on December 7, 1987. The complaint further alleged that Stoller had also defaulted on other notes and security agreements in the aggregate amount of $21,986.05, which he had signed in his individual capacity.

On September 12, 1989, a special process server traveled to the Illinois address Stoller had given Old Kent at the time he executed the guaranty and notes. The process server detailed, in an affidavit, how he served a man fitting Stoller's description, who hid behind a wall after learning of the process server's purpose.

Stoller failed to answer the complaint and on March 30, 1990, Old Kent filed a motion for default judgment. Stoller then filed a special and limited appearance through his first attorney, William J. Harte, Ltd., and a motion to quash service of summons in which it was contended that Stoller had never been served. The motion was supported by the affidavits of Stoller, Stoller's son and Steven Perrigo. Stoller's affidavit alleged that he had not been present in the State of Illinois on September 12, 1989, and that he no longer considered himself a resident of Illinois. He averred that his residence since January 1989 was 4795 North 44th Place, Phoenix, Arizona.

While waiting for the motion to be heard, Old Kent attempted to re-serve Stoller at the Arizona address Stoller had given. However, when a special process server attempted to serve Stoller, it was discovered that no such address existed.

On June 20, 1990, a hearing was held on Stoller's motion to quash. The trial court denied Stoller's motion to quash service and Stoller was given 28 days in which to answer or otherwise plead. In addition, Stoller's legal counsel admitted at this hearing that the Phoenix address that Stoller had given in his affidavit was incorrect. He claimed that the address had been inadvertently misstated and tendered a corrected address, 4702 North 40th Place, as Stoller's place of residence in Phoenix, Arizona.

Once again Stoller did not answer the complaint. Instead, on August 7, 1990, Stoller filed a motion to substitute counsel and requested additional time in which to answer. On August 21, 1990, the court granted leave to William J. Harte, Ltd., to withdraw as counsel

and Lori S. Klingman to file an appearance. Stoller was then given an additional 10 days in which to answer the complaint. Nevertheless, no action was taken within that time period.

On October 1, 1990, Old Kent obtained the affidavit of a clerk of the circuit court of Cook County, who indicated that the court file in this matter had been examined and that no answer had been filed by Stoller as of that date. Old Kent Bank corresponded with Stoller's attorney, Klingman, and obtained a copy of a proposed answer to the complaint she had prepared which was verified by Stoller's son as Stoller's agent, and dated October 16, 1990. However, this answer was not filed with the court. Consequently, Old Kent filed a motion for default judgment on October 22, 1990, and the motion was granted on November 13, 1990.

After obtaining the default judgment, Old Kent commenced post-judgment proceedings, filing citations to discover assets. Old Kent attempted to serve Stoller with citation but was unable to locate him. On December 7, 1990, the third attorney to represent Stoller, John Carr, filed an appearance with the court, along with a motion to vacate the default judgment entered against Stoller. On February 19, 1991, an amended motion to vacate the default judgment was filed and on February 25, 1991, Old Kent filed its objection to the motion and, in addition, filed the affidavit of a special process server who attempted to serve Stoller with a citation to discover assets. The process server stated that he traveled to the Phoenix, Arizona, address which had been supplied in open court by Stoller's former attorney. A woman named Ellen Mayer was found at that address and she indicated that she had lived at the address since 1964 and did not know Russell Stoller.

On March 13, 1991, after hearing on the matter, the circuit court denied Stoller's motion to vacate the default judgment. Thereafter, Old Kent moved to impress a lien on Stoller's beneficial interest in a land trust held by Harris Trust and Savings Bank, one of Stoller's assets discovered through service of citation. By order of the court dated April 12, 1991, Old Kent was allowed to file its motion to impress a lien on the Harris Bank land trust and attorney James B. Ford (Stoller's fourth attorney) was granted leave to file his appearance as Stoller's legal representative.

On April 19, 1991, Stoller, through his new attorney, filed an "Emergency Motion to Vacate and Reconsider." In this motion it was asserted that the default judgment, which had been granted for failure to answer or otherwise plead, should be vacated because an answer had been filed, *pro se*, with the court on June 26, 1990, but, due

to an error on the part of the Cook County clerk's office, was not properly docketed. The motion was supported by the affidavit of Stoller's son, Christopher, who claimed to have filed the answer in Judge Lassers' courtroom on behalf of his father. Also attached to the motion was a copy of the answer, allegedly verified by Stoller, in which he denied being a resident of Cook County, Illinois.

On May 28, 1991, after Stoller failed to appear for his citation to discover assets, the court granted Old Kent's motion to impose a lien on Stoller's beneficial interest in the Harris Bank land trust. The court also issued a rule to show cause against Stoller, returnable July 3, 1991. On July 3, 1991, the rule to show cause was continued until December 10, 1991.

In the meantime, Stoller and his son failed to appear for their scheduled depositions. Consequently, by order dated August 6, 1991, they were commanded to appear before Judge Cohen and produce certain documents by August 21, 1991. In response to this order, Stoller appeared for deposition on August 21, 1991, although he brought no documents. When asked to state his address, he indicated that 1212 Lathrop in River Forest, Illinois, was his address and that he had been living at this address for the last 17 years. He further stated that he also lived "on and off" in Northbrook, Illinois, for about four years. Additionally, he indicated that he did not personally sign, nor had any personal knowledge of, the answer to the complaint which his son allegedly filed June 26, 1990.

On December 19, 1991, Stoller again failed to appear in response to the rule to show cause. He was then given until January 16, 1992, to appear. Nevertheless, he still failed to appear on that date, causing the court to hold him in contempt. Stoller was given until February 13, 1992, to purge himself of the contempt. On February 13, 1992, Stoller, through Mr. Kitsos (Stoller's fifth attorney), moved to reset the court date based upon the affidavit of Stoller's son, which indicated that Stoller had been missing since February 2, 1992, when he allegedly left Florida to travel to Illinois. The motion to reset the court date was denied after the court questioned Stoller's son concerning his affidavit. A writ of body attachment was issued for Stoller and a warrant for contempt of court was issued, requiring Stoller to appear March 25, 1992. No appearance was made on March 25, 1992.

On April 13, 1992, Judge Lassers granted Stoller's motion to vacate the default judgment, based upon Stoller's allegedly filed, though not recorded, answer to the complaint. Nevertheless, Judge Lassers maintained the judicial lien on the Harris Bank land trust by order dated April 29, 1992.

Subsequently, Judge Cohen quashed all proceedings for the enforcement of the default judgment, including citation proceedings against Stoller and the judicial lien on the land trust. However, Judge Cohen provided that application could be made by Old Kent for judicial lien or attachment under article 4 in any future proceedings.

Old Kent then filed a motion before Judge Lassers to maintain attachment or lien upon Stoller's beneficial interest in the Harris Bank land trust. After a hearing conducted June 10, 1992, the court issued a temporary restraining order to restrain Stoller from transferring his interest in the property. This was done so that Old Kent would have time to obtain the affidavit and bond required for attachment under sections 4—104 and 4—107 of the Illinois attachment act (Act) (Ill. Rev. Stat. 1991, ch. 110, pars. 4—104, 4—107; 735 ILCS 5/4—104, 4—107 (West 1992)).

On June 12, 1992, Stoller moved to expunge and vacate the order of June 10, 1992, while Old Kent, in a motion dated June 16, 1992, moved for entry of an order of attachment accompanied by the required affidavits. On June 18, 1992, Stoller's present counsel, Rudnick and Wolfe and Mr. Seymour Simon, filed an appearance as additional attorneys for Stoller. On the same date the court issued a prejudgment order of attachment on Stoller's beneficial interest in Harris Trust and Savings Bank land trust No. 43429. This attachment order was amended June 23, 1992, and Stoller subsequently moved for, and obtained, a finding by the court that there was no just cause for delay of enforcement or appeal of these orders. Thereafter, Stoller filed this appeal from the two orders of attachment.

It is Stoller's position on appeal that the orders of attachment of his beneficial interest in the land trust should be quashed and vacated because there is no basis for employing this drastic measure. Stoller contends that the circumstances of this case do not fall within any of the statutory bases for granting a prejudgment attachment of property. (See Ill. Rev. Stat. 1989, ch. 110, par. 4—101; 735 ILCS 5/4—101 (West 1992).) However, before we may consider the merits of Stoller's appeal, we must address Old Kent's cross-appeal, which challenges the jurisdiction of the court to hear the appeal.

In its cross-appeal Old Kent argues that, despite the trial court's findings pursuant to Supreme Court Rule 304(a), this court is without jurisdiction to hear Stoller's appeal because: (1) the attachment orders are nonfinal orders which are unaffected by a Rule 304(a) finding, or (2) the trial court erred in granting Stoller's motion for a Rule 304(a) finding because the court failed to affirmatively show that there was, in fact, no just cause to delay enforcement or appeal.

We first turn to Old Kent's argument that attachment orders are not final orders and, therefore, cannot be made final by the addition of Rule 304(a) language. (See *Rice v. Burnley* (1992), 230 Ill. App. 3d 987, 596 N.E.2d 105 (nonfinal order not made final and appealable by trial court's finding that there is no just reason for delay of enforcement or appeal).) Consequently, we must consider whether a prejudgment attachment order is final within the meaning of Supreme Court Rule 304(a).

■ As noted in *Peter Fischer Import Motors, Inc. v. Buckley* (1984), 121 Ill. App. 3d 906, 910, 460 N.E.2d 346, attachment is a legal process which seizes and holds the property of the defendant until the rights of the parties are determined in the principal suit. Thus, such orders are interlocutory in nature and character and, because they do not completely dispose of any claim or terminate the litigation between the parties, are generally nonfinal and nonappealable. Nevertheless, prejudgment attachment is essentially a separate and distinct action which takes place within the context of the underlying action. There can be no meaningful relief from an order concerning prejudgment attachment if appeal before final disposition were not available. Therefore, we believe that a decision granting or denying a motion for attachment, or quashing or failing to quash an attachment order that was previously entered, must be considered final for the purposes of Supreme Court Rule 304(a).

In addition, there is sufficient, long-standing precedent for holding that an attachment order becomes final and appealable by the trial court's addition of an express finding that there was no just reason for delaying enforcement or appeal. (See *Smith v. Hodge* (1958), 13 Ill. 2d 197, 148 N.E.2d 793; *Peter Fischer*, 121 Ill. App. 3d at 911.) While it is true that the cases cited above dealt with orders quashing attachment orders rather than orders denying the quash of attachment, we find this to be a distinction without a difference. Certainly, if a creditor is permitted to appeal an order which releases property from attachment prior to a final determination in the suit, the debtor, whose property has been seized, should be granted the same latitude to appeal, prior to a final determination in the action, any order which refuses to release his property from attachment.

■ We next consider Old Kent's argument that, before a trial court may enter a finding pursuant to Supreme Court Rule 304(a), there must be an affirmative showing that injustice would result from the inability to immediately appeal. Other than citing case law for the general proposition that Rule 304(a) was instituted and designed to

discourage piecemeal appeals, Old Kent cites no case law in support of its theory. We must reject this argument.

In *Ariola v. Nigro* (1958), 13 Ill. 2d 200, 148 N.E.2d 787, the Illinois Supreme Court discussed the rationale for the enactment of section 50(2) of the Civil Practice Act, the precursor to Supreme Court Rule 304(a), stating that the theory of the provision is that "judgments determining fewer than all the matters" involved in the action shall not be appealable unless the trial court, in the exercise of its discretion, considers an immediate appeal to be appropriate. Although, the trial court's discretion in granting a Rule 304(a) finding must be exercised with care, "just reason" is simply a discretionary determination that permitting immediate appeal, under the circumstances, would be desirable. See *Bastas v. Vicere* (1990), 196 Ill. App. 3d 624, 554 N.E.2d 381.

There is no provision for review of the trial court's exercise of discretion when a Rule 304(a) finding is refused (*E.M.S. Co. v. Brandt* (1968), 103 Ill. App. 2d 445, 243 N.E.2d 695), but there is limited review of a trial court's exercise of discretion in allowing immediate appeal by adding Rule 304(a) language to an order. See *Susman v. Price* (1992), 230 Ill. App. 3d 639, 642, 594 N.E.2d 1332 (entry of a Rule 304(a) finding was an abuse of discretion since the order determined the scope of an option agreement before it determined its enforceability); *Bastas*, 196 Ill. App. 3d at 628 (court held there was no abuse of discretion in trial court's addition of a Rule 304(a) finding to order dismissing with prejudice plaintiff's complaint against one party, despite plaintiff's contention that he could not afford multiple appeals).

In this case Old Kent does not argue that the Rule 304(a) finding was procedurally improper or inappropriate, nor does it contend that it was manifestly unjust to have allowed immediate appeal. Old Kent merely contends that the trial court failed to state on the record its reasoning for granting the Rule 304(a) finding to the order denying the quash of attachment. Under these circumstances we find that the trial court did not abuse its discretion. As stated earlier, in order for review of a prejudgment attachment order to be meaningful, it must be conducted prior to final disposition of the underlying action.

We now turn our attention to Stoller's appeal from the trial court's refusal to quash the attachment order which seized Stoller's beneficial interest in the Harris Bank land trust. It is Stoller's position that the trial court was without authority to order the attachment of his property since none of the provisions of section 4—101 of the Act, which lists the conditions under which prejudgment attachment may be granted, were satisfied. Additionally, Stoller contends

that his beneficial interest in the land trust was not eligible for attachment, that Old Kent's bond was insufficient and, lastly, that attachment is a drastic measure which is inappropriate in this case.

We first consider whether any of the provisions of section 4—101 of the Act were satisfied. We note that the trial court held that there was cause for granting prejudgment attachment under the provisions of the Act. We note, too, that Stoller argues that our review of this matter should be *de novo* since the trial court's determination was made based upon documentary evidence. Stoller, without citation to any authority on point, contends that we should not give the usual deference to the trial court's determination and that for this court to reverse the trial court's determination there does not need to be a showing that the determination was against the manifest weight of the evidence or that the trial court abused its discretion. Old Kent disagrees with Stoller as to the standard of review.

We believe that, whatever the standard of review applicable to this matter, the documentary evidence fully supports a finding that there was cause for granting prejudgment attachment in this case pursuant to section 4—101 of the Act and, consequently, we affirm the judgment of the trial court.

Section 4—101 of the Act states as follows:

"Cause. In any court having competent jurisdiction, a creditor having a money claim, whether liquidated or unliquidated, and whether sounding in contract or tort, may have an attachment against the property of his or her debtor, or that of any one or more of several debtors, either at the time of commencement of the action or thereafter, when the claim exceeds $20, in any one of the following cases:

1. Where the debtor is not a resident of this State.

2. When the debtor conceals himself or herself or stands in defiance of an officer, so that process cannot be served upon him or her.

3. Where the debtor has departed from this State with the intention of having his or her effects removed from this State.

4. Where the debtor is about to depart from this State with the intention of having his or her effects removed from this State.

5. Where the debtor is about to remove his or her property from this State to the injury of such creditor.

6. Where the debtor has within 2 years preceding the filing of the affidavit required, fraudulently conveyed or assigned his

or her effects, or part thereof, so as to hinder or delay his or her creditors.

7. Where the debtor has, within 2 years prior to the filing of such affidavit, fraudulently concealed or disposed of his or her property so as to hinder or delay his or her creditors.

8. Where the debtor is about fraudulently to conceal, assign or otherwise dispose of his or her property or effects, so as to hinder or delay his or her creditors.

9. Where the debt sued for was fraudulently contracted on the part of the debtor. The statements of the debtor, his or her agent or attorney, which constitute the fraud, shall have been reduced to writing, and his or her signature attached thereto, by himself or herself, agent or attorney." Ill. Rev. Stat. 1989, ch. 110, par. 4—101.

Initially, Stoller contends that, despite his answer to the complaint in which he denied repeatedly that he is a resident of Illinois, the writ of attachment must fail because it should be his residency at the time the writ of attachment was issued that is the determining factor and he claims that *at that time* he was a resident of Illinois.

Interestingly, Stoller's residency in this State as of June 1992, when the attachment order was entered, is established, he claims, by his own affidavit in which he states that he resided in Illinois in June 1992; by the fact that he has been a registered voter in this State and voted here in the 1988 presidential elections; by the fact that he possesses an Illinois driver's license and states that he has never possessed a driver's license in any other State; and by the fact that his name is listed in the telephone directory as a resident of River Forest, Illinois. However, Stoller is unclear as to exactly when he was a resident of Arizona and when he lost his residency there and resumed his residency in Illinois.

■ Residency is not like religion or politics, which one may change depending solely upon what benefits the party. Residency, once established, is presumed to continue until the contrary is shown and the burden of proof to show a change of residency is upon the one asserting a change of residency. *Powers v. Kelley* (1967), 83 Ill. App. 2d 289, 227 N.E.2d 376.

The term "resident," as it is used within the statute, is not defined. Residence is defined in Webster's Third New International Dictionary as "the place where one actually lives or has his home as distinguished from his technical domicile: a temporary or permanent dwelling place, abode, or habitation to which one intends to return as distinguished from a place of temporary sojourn or transient visit."

(Webster's Third New International Dictionary 1931 (1986).) Black's Law Dictionary, fifth edition, distinguishes between the terms "residence" and "domicile," which it states are often used interchangeably but which are not legally synonymous. Legally, a person may have more than one "residence" but may claim only one domicile. Domicile, according to Black's, is another term for one's "legal residence." Black's Law Dictionary 435 (5th ed. 1979).

As noted during oral argument in this case, residency is largely a matter of intent and, as such, may be subject to fluctuation. Since a debtor's various claims of residency could be used to manipulate the court, when making a legal determination as to residency for the purposes of section 4–101 of the Act, it would be unsound to rely solely upon, or have a court bound by, the express statements of the debtor as to his residency on a given date. Rather, where a debtor's legal residency becomes an issue, a court may look to all of the evidence to make a determination as to a debtor's residency for purposes of section 4–101 of the Act.

■■ In this case, even a cursory review of the facts outlined earlier in this opinion shows that Stoller has submitted a number of affidavits in which he has made inconsistent and contradictory statements concerning his residency within the State of Illinois. These statements are also in direct contradiction with Stoller's signed, *pro se* answer to the complaint, which the court held to have been filed in this matter. Furthermore, the evidence which Stoller relies upon to support his claim that he was a resident of this State on the date that the writ of attachment was issued, *i.e.*, his voter registration, driver's license and phone listing, were all in existence at the time that Stoller was allegedly a resident of Arizona and he denied residency in this State in his answer. Therefore, we find this evidence unpersuasive.

Because the trial court vacated the default judgment previously granted in favor of Old Kent Bank on the basis of the answer to the complaint in which Stoller denied residency, we see no reason why Stoller's residency for the purposes of the attachment order, which was granted immediately following the vacation of the default judgment, should not be determined based upon Stoller's answer, which was never amended or corrected. Stoller's answer denied residency in this State and we do not find that he has met his burden of proof to show a change of residency since the filing of the answer.

The evidence in this case has shown that Stoller has exhibited a pattern of fluctuation in his intent as to residency. After viewing Stoller's course of conduct, especially in light of his inconsistent affidavits on this subject and because he has held himself out during this case to

be a nonresident of this State, we find that there was sufficient basis for finding that Stoller was not a resident of this State. Consequently, the first provision of the statute was satisfied and the trial court had authority to grant attachment in this case.

Although we believe that the attachment order was properly granted based upon the residency provision, we find that provision 2 of section 4—101 was also satisfied. We realize that Stoller vehemently denies that he concealed himself or stood in defiance of an officer for the purpose of avoiding service of process. However, we believe that the record speaks for itself.

In addition, section 4—102 of the Act requires a court to construe the attachment statute "in the most liberal manner for the detection of fraud." (Ill. Rev. Stat. 1989, ch. 110, par. 4—102.) Therefore, construing the statute liberally, we find that there were sufficient indications that Stoller was not making himself amenable to process and that his pattern of conduct evidenced a lack of regard for the judicial process. Therefore, there was additional cause for granting attachment in this case.

Based upon the above determinations, we need not consider whether any other provision of section 4—101 was satisfied. It is immaterial whether there was evidence that Stoller left the State or was about to leave the State with the intent of removing his assets from the State.

■ Having disposed of Stoller's claims that attachment, in general, was not proper because the statutory provisions were not met, we now turn our attention to Stoller's contentions that attachment of his beneficial interest in the Harris land trust, in particular, was improper. First, Stoller contends that this asset was "not eligible" for attachment because its value far exceeded the value of Old Kent's claim against Stoller. According to Stoller, the land trust has a value of $3 million, while Old Kent's claim, at best, is less than 10% of this value. Stoller claims that the disparity between these two values makes the asset ineligible for attachment in this case. Secondly, Stoller contends that the bond posted by Old Kent, in satisfaction of the requirements of the Act, was insufficient because Old Kent posted a bond in double the sum sworn to be due rather than double the sum of the value of the asset, which Stoller contends is required.

Stoller cites no case law for either of these propositions but relies on section 4—108 of the Act (Ill. Rev. Stat. 1989, ch. 110, par. 4—108; 735 ILCS 5/4—108 (West 1992)) to support his argument. Stoller cites a portion of section 4—108 as evidence of his proposition that the value of the property to be attached may not exceed the value of the

debt and that the bond posted must be double the value of the property to be attached.

The meaning of a statute may not always be interpreted by citation to words of an isolated provision. When determining legislative intent a statute must be read as a whole and all relevant parts considered. (*People v. Jordan* (1984), 103 Ill. 2d 192, 469 N.E.2d 569.) There appears to be no case law interpreting section 4—108; however, we believe that section 4—108 must be read in conjunction with section 4—107. When so read it becomes apparent that section 4—108 is for the benefit of the creditor with a claim larger than the value of the property to be attached, to reduce the amount of bond required.

Section 4—107 of the Act states that "[b]efore the entry of an order for attachment, *** the court shall take bond and sufficient security, *** in double the sum sworn to be due." (Ill. Rev. Stat. 1989, ch. 110, par. 4—107.) Section 4—108 of the Act provides for an alternative fixing of the bond amount to double the value of the property to be attached when the value of the property to be attached is less than the value of the claimed debt plus costs. We believe that this is the only reasonable construction of the statute.

In this case, even if we accept Stoller's appraisal of the value of the attached land trust to be true, the fact that the value of the asset exceeds the value of the claim does not make the asset ineligible for attachment and Old Kent's bond, in double the amount of the value of the claimed debt plus costs, is sufficient under the facts of this case.

Additionally, we note that if Stoller wishes to procure the release of his attached property he may do so pursuant to section 4—120 of the Act (Ill. Rev. Stat. 1989, ch. 110, par. 4—120; 735 ILCS 5/4—120 (West 1992)) by the posting of a bond in the sum sufficient to cover the amount sworn to be due, with all interest, damages and costs.

■ Stoller's final argument is that attachment is a drastic measure which was inappropriately employed in this case. In support of this argument Stoller points to the dearth of modern case law on the subject of attachment.

Perhaps the dearth of case law is more related to the fact that attachment orders are nonfinal and nonappealable without a Rule 304(a) finding by the trial court. Also, the cost of litigation today often precludes this sort of intermediate appeal.

In any event, we believe that the purpose of attachment is to provide a remedy in cases exactly like the one at bar, so a creditor may secure a debtor's property and hold it, to satisfy a debt which the creditor hopes to prove. (*Bowman v. Dixon Theatre Renovation, Inc.* (1991), 221 Ill. App. 3d 35, 581 N.E.2d 804.) It may well be a drastic

measure, but it is certainly appropriate here, where Stoller's attention to Old Kent's claim was not gained until attachment proceedings were begun.

For all the reasons stated above, we affirm the orders of attachment issued by the trial court and remand this case to the trial court for further proceedings on Old Kent's underlying complaint against Stoller.

Affirmed.

GORDON, P.J., and COUSINS, J., concur.