AMCORE BANK, N.A., ROCK RIVER VALLEY, Plaintiff-Appellant, v. HAHNAMAN-ALBRECHT, INC., *et al.*, Defendants (Dean Hamilton, Defendant-Appellee).

Second District   No. 2—98—0675

Opinion filed May 26, 1999.—Rehearing denied June 21, 1999.

Robert Lindstrom and Anthony P. Ulm, both of Mustain, Lindstrom & Henson, of Galesburg, for appellant.

Joseph M. Laraia, of Laraia & Hubbard, P.C., of Wheaton, and Eugene G. Doherty, of Holmstrom & Kennedy, P.C., of Rockford, for appellee.

JUSTICE THOMAS delivered the opinion of the court:

Plaintiff, Amcore Bank, N.A., Rock River Valley, brought an action against defendant Hahnaman-Albrecht, Inc. (HAI), to collect on two promissory notes and also joined the guarantors of the notes, defendant Dean Hamilton, president of HAI, along with defendants Jeffrey Hamilton, Thomas F. Conley, David Von Holten and Paul Rittmanic. Plaintiff then filed an action for prejudgment attachment, which is at issue in the instant appeal, against defendant Dean Hamilton (Hamilton) only. At the close of plaintiff's case on the action for attachment, the trial court granted Hamilton's motion for judgment in his favor, denied plaintiff's request for attachment, and held that there was no just reason to delay enforcement or appeal of the order. Plaintiff now appeals the trial court's ruling in favor of Hamilton.

The facts relevant to this appeal are as follows. On March 13, 1997, plaintiff filed a complaint against HAI alleging that on August 30, 1994, plaintiff and HAI had entered into a revolving credit agreement, pursuant to which plaintiff was the holder of two promissory notes executed by HAI and payable to plaintiff for $2 million and $15 million, respectively. Hamilton and the other individual defendants were guarantors of the notes. Plaintiff alleged that on February 10, 1997, it had sent HAI a letter declaring the agreement to be in default, that plaintiff had demanded full payment of the promissory notes, and that HAI had refused to pay the notes. Plaintiff's complaint also contained counts against each of the guarantors for the amounts due under the notes.

Plaintiff then filed an affidavit for attachment against Hamilton alleging that with actual intent to hinder, delay, or defraud creditors, Hamilton had transferred personal assets to insiders at a time when he was or became insolvent and when he knew that HAI would be unable to repay plaintiff. Plaintiff alleged that on January 24, 1997, Hamilton had executed a warranty deed conveying a condominium unit that he owned to his stepdaughters, Dina K. Frye and Dana K. Andrus, and on December 27, 1996, executed a quitclaim deed conveying a condominium unit he owned in Arizona to his daughter, Carol Hamilton.

A bench trial was held on plaintiff's affidavit for attachment. At the close of plaintiff's case, Hamilton orally moved for a finding in his favor on the ground that plaintiff had not met its burden of proof. The trial court then raised the issue of whether plaintiff was required to show that it would be unable to collect a judgment against the other defendants, including HAI and the other guarantors, in order to obtain an order of attachment against Hamilton's assets. The trial court then allowed Hamilton to file a written motion for a finding in his favor.

On April 29, 1998, the trial court entered its written memorandum opinion. The court held that the elements that plaintiff had to prove under the statute were that (1) plaintiff probably would prevail in its action against Hamilton; (2) Hamilton had fraudulently conveyed part of his assets; (3) the fraudulent activity had occurred since November 25, 1995; and (4) as a result, the plaintiff was hindered or delayed. The court held that, viewing the evidence in the light most favorable to plaintiff, plaintiff probably would prevail in its action against Hamilton. Further, the court held that Hamilton did fraudulently dispose of part of his property, evidenced by the fact that since November 25, 1995, Hamilton knew that HAI was experiencing financial difficulties and during that time he had (1) conveyed his Arizona condominium to his daughter by quitclaim deed for no consideration; (2) conveyed the remainder interest in his home to his stepdaughters for no consideration while retaining a life estate for himself and his wife; (3) conveyed a remainder interest in another Arizona condominium to his daughter for no consideration while reserving a life estate for himself and his wife; (4) transferred an investment interest to his daughter; and (5) purchased a substantial annuity for his wife.

The court then noted that it had found no case law concerning whether an attachment could issue against Hamilton when other guarantors also would be responsible for the full amount and were able to pay the plaintiff. The court concluded that the statute required that the debtor's actions must be such that the creditor would be hindered or delayed as a result of those actions. The court denied plaintiff's request for attachment against the assets of Hamilton, finding that, if the other guarantors were able to pay the debt, plaintiff would not be hindered or delayed no matter what Hamilton did and that the burden should be on the plaintiff to show whether the other guarantors would be able to pay the judgment.

On appeal, plaintiff contends that the trial court's analysis concerning whether plaintiff was hindered or delayed by Hamilton's fraudulent transfers was misdirected and argues that the fact that plaintiff might be able to obtain payment of the indebtedness from others has no bearing on the attachment action against Hamilton. Plaintiff argues that the relevant inquiry is whether Hamilton's actions were taken with the intent to hinder or delay his creditors. Plaintiff asks this court to reverse the trial court's order in favor of Hamilton.

In response, Hamilton contends that the trial court was correct in dismissing plaintiff's action on the ground that it was necessary to determine the financial status of the other joint debtors in order to

determine whether a debtor's conduct would hinder or delay his creditor. Hamilton, however, also asks this court to find that the trial court erred in holding that Hamilton's transfers of property were made with the intent to defraud plaintiff and erred in finding that there was a likelihood that the plaintiff would succeed on the merits of the underlying cause of action.

■ The attachment statute (735 ILCS 5/4—101 *et seq.* (West Supp. 1997)) provides, in pertinent part:

"In any court having competent jurisdiction, a creditor having a money claim, whether liquidated or unliquidated, and whether sounding in contract or tort, or based upon a statutory cause of action created by law in favor of the People of the State of Illinois, or any agency of the State, may have an attachment against the property of his or her debtor, or that of any one or more of several debtors, either at the time of commencement of the action or thereafter, when the claim exceeds $20, in any one of the following cases:

\* \* \*

6. Where the debtor has within 2 years preceding the filing of the affidavit required, fraudulently conveyed or assigned his or her effects, or a part thereof, so as to hinder or delay his or her creditors.

7. Where the debtor has, within 2 years prior to the filing of such affidavit, fraudulently concealed or disposed of his or her property so as to hinder or delay his or her creditors." 735 ILCS 5/4—101(6), (7) (West Supp. 1997).

At the hearing on the order for attachment, a plaintiff must show by a preponderance of the evidence that cause for the entry of the order exists and must show the probability that it will prevail in the action. 735 ILCS 5/4—137 (West 1996).

■ Where there are joint debtors, the attachment statute provides:

"In all cases where two or more persons are jointly indebted, either as partners or otherwise, and an affidavit is filed as provided in Part 1 of Article IV of this Act, so as to bring one or more of such joint debtors within its provisions, and amenable to an action for attachment, then the order for attachment shall be entered against the property and the effects of such as are so brought within the provisions of Part 1 of Article IV of this Act; and the officer shall be *also directed to summon, all defendants to the action*, whether the action for attachment is against them or not, to answer the action, as in other cases of joint defendants." (Emphasis added.) 735 ILCS 5/4—111 (West 1996).

■ Hamilton notes that none of the other guarantors were named, joined in, or given notice of the attachment proceedings against him. Hamilton argues that section 4—111 of the attachment statute, by requiring service of summons on all defendants to the action, supports

the trial court's finding that the financial positions of any joint debtors must be ascertained before an attachment can be ordered against one of the debtors. We disagree with this interpretation of section 4—111, as it has long been the rule that "power is expressly given to proceed against one joint debtor where the others are not served." *Mulligan v. Alsen*, 222 Ill. App. 615, 617 (1921). It is undisputed that the other guarantors were not served with summons in the attachment action against Hamilton. However, the failure to comply with section 4—111 of the attachment statute did not deprive the trial court of jurisdiction over the action. In *Mulligan*, the court addressed whether the failure to serve one of two partners in an attachment action deprived the court of jurisdiction to hear the merits of the action and thereby rendered the attachment judgment against one of the partners void. *Mulligan*, 222 Ill. App. at 616. The court concluded that because power had been given to proceed against one joint debtor where others had not been served, the judgment against the partner at issue was valid. *Mulligan*, 222 Ill. App. at 617. Accordingly, we conclude that, while the other guarantors should have been served with a summons in this case, the failure to do so did not deprive the trial court, and thus this court, of jurisdiction to hear the merits of the attachment action.

Turning to the merits of plaintiff's appeal, the trial court interpreted the language "so as to hinder or delay his or her creditors" in subsections 4—101(6) and (7) of the attachment statute (735 ILCS 5/4—101(6), (7) (West Supp. 1997)) to mean that the creditor must actually be hindered or delayed as a result of the debtor's actions. Because the construction of a statute is a question of law, this court's review is *de novo*. *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997).

■ There is a dearth of modern case law concerning the issue of attachment, possibly due to the fact that attachment orders are not final and are not appealable without a Rule 304(a) (155 Ill. 2d R. 304(a)) finding by the trial court. *Old Kent Bank v. Stoller*, 254 Ill. App. 3d 1085, 1098 (1993). Moreover, the cost of litigation may preclude such intermediate appeals. *Old Kent Bank*, 254 Ill. App. 3d at 1098. Nonetheless, we note that in cases interpreting the attachment statute courts have held that the language "so as to hinder or delay creditors" means that the debtor entered into the conveyance with the fraudulent intent to hinder or delay creditors.

■■ Thus, where a retail merchant's stock was destroyed by fire and he assigned his insurance policies to his father, the court held that "[t]he only question involved is whether the assignment of the policies of insurance to appellee's father *was for the purpose of hindering and delaying* appellee's creditors in the collection of their debts."

(Emphasis added.) *Field v. Stout*, 68 Ill. App. 360, 361 (1896). Further, it has been held that all that is required to protect the assignee of a debtor's assets " 'is that the transfer to him shall have been made in good faith, and *without any intent* to hinder, delay or defraud creditors.' Freeman on Executions, 2d Ed., Sec. 170." (Emphasis added.) *Mayr v. Hodge & Homer Co.*, 78 Ill. App. 556, 564 (1898). Similarly, the supreme court has recognized that a conveyance of property may be deemed fraudulent as against creditors under the attachment statute on two grounds: where it was entered into *"with the fraudulent intent* to hinder and delay creditors," or where the conveyance is fraudulent as a matter of law *"without regard to the real motives or purposes* of the debtor." (Emphasis added.) *Murry Nelson & Co. v. Leiter*, 190 Ill. 414, 416 (1901). In addition, although constructive fraud alone has been held an insufficient basis for an attachment, constructive fraud "together with proof of other circumstances *tending to disclose an actual intention to defraud* will justify the issuance of an attachment writ." (Emphasis added.) *Brady v. Marshall*, 302 Ill. App. 151, 155 (1939).

■ We believe that the foregoing case law remains the law in Illinois and that the trial court erred in holding that plaintiff was required to show that it actually was hindered or delayed as a result of Hamilton's actions. Applying the trial court's interpretation of the statute would allow a fraudulent debtor to escape liability as long as he had joint debtors that did not fraudulently dispose of their assets, thereby rewarding a debtor for his dishonesty at the expense of his honest joint debtors, a result we do not care to encourage. The proper inquiry under the statute is whether Hamilton's actions were made with the intent to hinder or delay plaintiff. Because the trial court held that, viewing the evidence in the light most favorable to plaintiff, Hamilton disposed of his property with the intent to defraud, the trial court should have denied Hamilton's motion for judgment in his favor. Accordingly, we reverse the judgment of the trial court in favor of Hamilton and remand this cause for further proceedings consistent with this opinion.

For all of the foregoing reasons, the judgment of the circuit court of Lee County is reversed and the cause remanded.

Reversed and remanded.

INGLIS and GALASSO, JJ., concur.