2022 IL App (1st) 210346-U

THIRD DIVISION
November 2, 2022

No. 1-21-0346

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| IN RE THE MATTER OF: | ) | |
| | ) | Appeal from |
| LaTONYA SIVELS, | ) | the Circuit Court |
| | ) | of Cook County |
| Petitioner-Appellee, | ) | |
| | ) | 2012-D-08393 |
| and | ) | |
| | ) | Honorable |
| CLINTON WASHINGTON, | ) | Maritza Martinez, |
| | ) | Judge Presiding |
| Respondent-Appellant | ) | |

PRESIDING JUSTICE McBRIDE delivered the judgment of the court.
Justices Reyes and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: Appellate court lacked jurisdiction over untimely filed interlocutory appeal.

¶ 2    For the past decade, petitioner LaTonya Sivels and respondent-appellant Clinton Washington have been litigating questions of custody and support for their two children, the younger of whom is now 17 years old. Washington brings this interlocutory appeal from orders awarding $33,204 as reasonable attorney fees to the minor children's representative, Matthew A. Kirsh, and finding Washington in indirect civil contempt for failing to comply with the fee order. Washington argues the circuit court abused its discretion by granting Kirsh's fee

petition without reviewing any evidence of the reasonableness or necessity of the amounts that were requested.

¶ 3     Kirsh has not filed an appellate response brief, however, we consider the merits of Washington's appeal because the record is simple and the claimed error can easily be decided without the aid of an appellee's brief. *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976).

¶ 4     Kirsh was appointed as the children's representative when this case began in 2012. He continued in that capacity after the older child became emancipated in 2017.

¶ 5     Kirsh filed a fee petition on December 20, 2018 indicating that the parents had "received detailed monthly billing for all services rendered by [Kirsh] since his appointment." He claimed that a total of $51,152.50 "reasonable and necessary" fees and costs had accrued during his representation of the children or younger child. After deducting the $500 retainer that each parent paid pursuant to the order appointing Kirsh to the case and Washington's subsequent payment of $18,400, there was an unpaid balance of $32,424.50. Kirsh asked the circuit court to enter judgment in that amount against Sivels and Washington and that they be granted the right to file pleadings allocating responsibility for their respective shares of the judgment.

¶ 6     In his written response, Washington admitted receiving detailed billing, but contended it was "on an untimely basis." He identified seven issues with the amount of attorney fees that Kirsh was requesting:

"the majority of services performed by Movant were unreasonable and unnecessary; the majority [of] services performed by Movant did not materially benefit the parties or their child; the fees charged by Movant for its representation of the parties' child were excessive;

the hourly rates charged by Movant for its representation of the parties' child [were] unreasonable; Movant did not adequately meet with the child as part of his investigation; Movant did not adequately meet with the parties as part of his investigation; Movant needlessly incurred expenses rendering impermissible opinions; and Movant needlessly incurred expenses rendering impermissible recommendations."

¶ 7 The court heard Kirsh's fee petition on April 3, 2019. We cannot summarize what happened during that hearing because the record on appeal does not include a hearing transcript. The court's written order indicates that "a hearing on the fee petition" took place and the court was "fully advised" when it found that the "reasonable fees owed by the parties to the child representative through 12/14/18 are $31,742.50." The order also indicates that Kirsh orally withdrew his request for entry of judgment and that the court scheduled a hearing on May 16, 2019 for the litigants to address the allocation of fees and make closing arguments. They were given 21 days to "prepare and exchange updated financial affidavits and Rule 13.3.2 supporting documents" and until May 1, 2019 to give the court their memoranda of law.

¶ 8 However, when the matter was set on May 16, 2019, the court entered an agreed order stating in relevant part: "3. This matter is set for hearing on the allocation and reasonableness of the child representative's fees on 09/11/19, at 10:30 a.m.; and Mr. Kirsh shall tender updated billing statements by 09/04/19. The 237(b) notice to appear and produce previously served on [Washington] is continued to the above-stated date and time." Illinois Supreme Court Rule 237, entitled "Compelling Appearances of Witnesses at Trial," concerns the required attendance of witnesses and their production of documents, and authorizes a sanction or other appropriate remedy for noncompliance. Ill. S. Ct. R. 237 (eff. July 1, 2005).

¶ 9     On the next scheduled court date, September 11, 2019, the court again addressed Kirsh's fee petition. This is another date, however, for which there is a written order but no transcript in the record on appeal. The order indicates that the parties were represented by counsel and after the court was "fully advised," it found that Kirsh's reasonable fees and costs through September 10, 2019 were $54,320, of which he was owed $35,420. The court (1) allocated $33,204 of the fees to Washington and $2,216 to Sivels; (2) ordered them to pay Kirsh within 7 days (that is, by September 18, 2019); (3) scheduled a court date for October 8, 2019 to address the status of their payments; and (4) further ordered, "Both parties shall appear on 10/8/19."

¶ 10    A written order entered on October 8, 2019 indicates that Kirsh tendered a verified petition for rule to show cause as to why Washington should not be held in indirect civil contempt of court for his willful failure to obey the payment order entered on September 11, 2019. The court ordered Washington to appear on October 15, 2019.

¶ 11    Despite that order, Washington did not appear as scheduled on October 15, 2019 for the rule to show cause hearing. The October 15, 2019 order indicates that Kirsh had also "served an Illinois Rule 237(b) and 237(c) [notice] upon [Washington] requiring his appearance in court at 11:30 a.m. this morning." Washington's attorney did not attend the hearing either, despite having told Kirsh to anticipate him being "15 minutes late" that morning. The order concludes that the court, "having heard the testimony of the parties and witnesses, together with all pleadings, exhibits, and arguments of counsel, and being fully advised in the premises," (1) "found and declared [Washington] to be in indirect civil contempt of Court for willful failure to obey the Court's order," and (2) "ordered [him] committed to the Cook County Jail" until he purged himself of contempt by paying Kirsh $33,204. The court stayed Washington's commitment until October

29, 2019, scheduled a status hearing for that morning, and ordered Washington to appear at that date and time.

¶ 12     The court's order on October 29, 2019 indicates that when the matter was called as scheduled, Washington did not appear. Kirsh testified under oath that Washington had not paid the contempt-purging amount of $33,204 which the court had specified two weeks earlier. Washington's attorney indicated that Washington had filed for Chapter 13 bankruptcy on October 25, 2019. The court extended its stay of the commitment order until further order of the court and scheduled a status date for December 6, 2019.

¶ 13     On December 6, 2019, Washington did not appear. Kirsh informed the court that Washington had still not attempted to purge himself of the contempt finding. In addition, Washington's bankruptcy filing had been dismissed on November 22, 2019, but he filed another Chapter 13 bankruptcy action on November 26, 2019, which was pending. The circuit court extended its stay of Washington's commitment until further order of the court. Although it was then the last month in 2019, the court scheduled a status date for "March 23, 2019." We read "2019" as a mistake in the handwritten order, as that year was drawing to a close and it was nearly 2020. The case was next heard in 2020.

¶ 14     On February 7, 2020, Kirsh filed a motion to lift the stay of the order of commitment. In this motion, Kirsh related that both of Washington's bankruptcy filings had been dismissed because he did not follow through with requirements such as filing his last three tax returns, proof of income, and a reorganization plan. Furthermore, when the federal court entered the second dismissal on January 31, 2020, it did so with prejudice to refiling for 180 days, because Washington's serial filings without compliance with the bankruptcy code requirements

1-21-0346

demonstrated a pattern of abusing the system and filing for bankruptcy protection in bad faith solely to frustrate his creditors. On February 21, 2020, the circuit court entered an order of commitment due to Washington's failure to pay Kirsh $33,204 as ordered on September 11, 2019, and specified that Washington could purge the contempt finding by paying $33,204.

¶ 15    It is unclear from the record on appeal what occurred during the ensuing year or so. However, during 2020, many in-person court dates were postponed in the circuit court due to the COVID-19 pandemic,[1] and when the court called this particular case on July 6, 2020 for "COVID-19 Postcard Status," the court scheduled a new status date in February 2021.

¶ 16    On December 8, 2020, Washington filed a motion to quash the order of commitment, on grounds that he filed a Chapter 13 bankruptcy petition on October 7, 2020. This was the third of three bankruptcy actions that Washington filed during these proceedings. Washington contended that his bankruptcy action caused an automatic stay against collecting a domestic support obligation from his assets. On February 26, 2021, the circuit court heard and denied Washington's

---

[1] Illinois Governor J.B. Pritzker issued the state's first COVID-19 disaster proclamation on March 12, 2020. https://coronavirus.illinois.gov/content/dam/soi/en/web/coronavirus/documents/coronavirus-disaster-proc-03-12-2020.pdf (last visited July 13, 2022). Stay-at-home restrictions were implemented by Illinois executive order effective March 21, 2020. https://coronavirus.illinois.gov/resources/executive-orders/display.executive-order number 10.2020.html (last visited July 13, 2022). March 13, 2020 was when the circuit court of Cook County began periodically entering general administrative orders that rescheduled in-person court dates due to the pandemic. See General Administrative Order No. 2020-01, Covid-19 Emergency Measures, https://www.cookcountycourt.org/Manage/Rules-of-the-Court/Read-Rule/ArticleId/2737/General-Administrative-Order-2020-01-COVID-10-EMERGENCY-MEASURES (last visited July 13, 2022). On March 24, 2020, the Illinois supreme court entered an order temporarily extending "[t]he deadline to file a notice of appeal in the circuit court *** from 30 days to 60 days from the date of the circuit court judgment." *In re Illinois Courts Response to COVID-19 Emergency*, M.R. 30370 (March 24, 2020). On July 6, 2020, most civil proceedings resumed in the circuit court. See General Administrative Order No. 20-02, https://www.cookcountycourt.org/Portals/0/Chief%20Judge/General%20Administrative%20Orders/6_26_20%20GAO%202020-02.pdf (last visited July 13, 2022). On August 28, 2020, the Illinois supreme court vacated its March 24, 2020 order which had temporarily lengthened the time for filing an appeal from 30 to 60 days from entry of the circuit court judgment. *In re Illinois Courts Response to COVID-19 Emergency*, M.R. 30370 (August 28, 2020).

motion to quash the order of commitment and specified that the commitment order would remain in full force and effect. The circuit court's order indicates that on December 18, 2020, the bankruptcy court had dismissed Washington's 2020 bankruptcy filing and again barred him from refiling for 180 days.

¶ 17　The court's order dated March 2, 2021 directs the Cook County sheriff to immediately place the commitment order dated February 21, 2020 into the LEADS database and provides that any and all costs associated with that placement into the system would be allocated to Washington. LEADS is the Law Enforcement Agencies Data System maintained by the Illinois State Police as a "statewide, computerized telecommunications system" accessible by "the law enforcement and criminal justice community in the State of Illinois." 20 Ill. Adm. Code 1240.10(a) (2022).

¶ 18　Washington filed a notice of appeal on March 29, 2021.

¶ 19　On appeal, he argues that the attorney fee hearing on April 3, 2019 did not comply with section 5/506(b) of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/506(b) (West 2016). The statute states:

> "(b) Fees and costs. The court shall enter an order as appropriate for costs, fees, and disbursements, including a retainer, when the attorney, guardian *ad litem*, or child's representative is appointed. Any person appointed under this Section shall file with the court within 90 days of his or her appointment, and every subsequent 90-day period thereafter during the course of his or her representation, a detailed invoice for services rendered with a copy being sent to each party. The court shall review the invoice submitted and approve the fees, if they are reasonable and necessary. Any order approving the fees shall require payment by either or both parents, by any other party or source, or from the

marital estate or the child's separate estate. *** Unless otherwise ordered by the court at the time fees and costs are approved, all fees and costs payable to an attorney, guardian *ad litem*, or child representative under this Section are by implication deemed to be in the nature of support of the child and are within the exceptions to discharge in bankruptcy under 11 U.S.C.A. 523. The provisions of Sections 501 and 508 of this Act shall apply to fees and costs for attorneys appointed under this Section." 750 ILCS 5/506 (West 2016).

¶ 20    According to Washington, the court entered the award "after [it] heard some kind of evidence on April 3, 2019, (SUP2 C13), [but] no petition stating the detailed services performed and the amount of fees claimed was ever presented to the trial court." He contends that detailed time records were expected so that the court could consider relevant factors such as whether there was a reasonable connection between the fees and the litigation, and that without the time records, it was an abuse of discretion to award fees. We have no way of confirming Washington's description of the fee hearing because the record on appeal lacks a transcript or one of the alternatives such as a bystander's report. Furthermore, the attorney who represented Washington during the fee proceedings is not representing Washington in this appeal.

¶ 21    Washington concludes his argument with the statement, "Last[,] the Court exceeded its authority to issue an Attachment Order under 750 5/513 [*(sic)*] which denied due process of Washington's procedural rights."

¶ 22    We first consider our jurisdiction to review the proceedings as we must dismiss an appeal when our jurisdiction is lacking. *Fabian v. BGC Holdings, LP*, 2014 IL App (1st) 141576, ¶ 12.

¶ 23    The appellant bears the burden of establishing jurisdiction. *In re Marriage of Salviola*, 2020 IL App (1st) 182185, ¶ 36.

¶ 24    Our jurisdiction is limited to reviewing appeals from final judgments, subject to statutory or supreme court rule exceptions. *People ex rel. Block v. Darm*, 267 Ill. App. 3d 354, 355 (1994).

¶ 25    In his required statement about our jurisdiction, Washington identifies five orders: the orders granting Kirsh's fee petition on April 3 and September 11, 2019, the order finding Washington in indirect civil contempt on October 15, 2019 but which the court stayed, the order committing Washington to jail on February 21, 2020 until he purges himself of contempt, and the order on March 2, 2021 directing the local sheriff to put the commitment order into LEADS. Washington cites Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016) as authority for his appeal. Rule 304 provides for the appeal of certain final judgments and Rule 304(b)(5) in particular authorizes appeal from "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016).

¶ 26    The April and September 2019 orders which determine Kirsh's right to a specific amount of attorney fees are not independently appealable. Section 506 (b) of the Act (which we quoted above when setting out Washington's argument) requires that a child representative be compensated for 'reasonable and necessary' attorney fees. *In re Marriage of Thompson*, 384 Ill. App. 3d 1, 3 (2008) (quoting 750 ILCS 506(b) (West 2002)). A representative's fee petition will be governed either by section 501 or section 508 of the Act. *In re Marriage of Thompson*, 384 Ill. App. 3d at 3. "Section 501 relates to temporary relief and authorizes courts to award 'interim attorney's fees and costs,' defined by the statute as 'attorney's fees and costs assessed from time to time while a case is pending, in favor of the petitioning party's current counsel, for reasonable fees and costs either already incurred or to be incurred.' " *In re Marriage of Thompson*, 384 Ill. App. 3d at 3 (quoting 750 ILCS 5/501(c-1) (West 2002)). Section 508, however, relates to final

fees and costs. *In re Marriage of Thompson*, 384 Ill. App. 3d at 3 (citing 750 ILCS 5/508 (West 2002)). The case between Sivels and Washington is still pending, their younger child is still a minor, and Kirsh's role as the child's representative is ongoing. The circuit court considered one of Kirsh's interim fee statements, not a final fee statement, assessed the amount of fees that were reasonable and necessary, and allocated them between Sivels and Washington. "Except for good cause shown, a proceeding for (or relating to) interim attorney's fees and costs shall be nonevidentiary, summary in nature, and expeditious." *In re Marriage of Thompson* (quoting 750 ILCS 5/501(c-1)(1) (West 2002)). An interim award is an interlocutory order and is not appealable. *In re Marriage of Johnson*, 351 Ill. App. 3d 88, 96 (2004).

¶ 27    Nevertheless, an appeal from a final judgment will draw into issue all previous interlocutory orders that produced the final judgment. *Burtell v. First Charter Service Corp.*, 76 Ill. 2d at 427, 433 (1979); *Valdovinos v. Luna-Manalac Medical Center, Ltd.*, 307 Ill. App. 3d 528, 538 (1999). An appellate court has jurisdiction to review an interlocutory order that constitutes a procedural step in the progression leading to the entry of the final judgment from which an appeal has been taken. *Valdovinos,* 307 Ill. App. 3d at 538. For instance, in *CitiMortgage, Inc. v. Hoeft*, 2015 IL App (1st) 150459, ¶ 8, the denial of a motion to dismiss was considered to be "a procedural step" toward a foreclosure order and a final judgment confirming the sale after the foreclosure. Those three orders were "integrally interrelated" and the court had jurisdiction to review the order denying the motion to dismiss. *Hoeft*, 2015 IL App (1st) 150459, ¶ 8. Thus, although the two orders addressing Kirsh's fee petition and allocating liability between Sivels and Washington are not grounds for an interlocutory appeal, the question remains whether they are procedural steps to a final, appealable judgment order.

¶ 28   The October 15, 2019 order that Washington cites for purposes of appellate jurisdiction is an order finding him in contempt of court. The court stayed that contempt order over the next few weeks and months as Washington pursued personal bankruptcy claims, but on February 21, 2020 the court imposed the penalty of commitment to jail until Washington has purged himself of contempt. These two orders would be reviewable under Rule 304(b)(5), as that rule authorizes immediate appeal from "[a]n order finding a person *** in contempt of court which imposes a monetary or other penalty." Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). A contempt judgment that imposes a sanction is considered a final, appealable order because, although the judgment occurs within another proceeding and thus would appear to be interlocutory, " 'it is an original special proceeding, collateral to and independent of, the case in which the contempt arises.' " *In re Marriage of Gutman*, 232 Ill. 2d 145, 152 (2008) (quoting *People ex rel. Scott v. Silverstein*, 87 Ill. 2d 167, 172 (1981)); *People ex rel. General Motors Corp. v. Bua*, 37 Ill. 2d 180, 191 (1967) ("The imposition of a fine or imprisonment as a sanction for contempt is final and appealable because it is an original special proceeding"); *Kazubowski v. Kazubowski*, 45 Ill. 2d 405, 414-15 (1970) ("ordinarily an adjudication in a contempt proceeding is final and appealable because it is an original special proceeding, collateral to, and independent of, the case in which the contempt arises where the imposition of the sanction does not directly affect the outcome of the principal action"). The contempt finding alone did not trigger Rule 304(b)(5), but the imposition of a sanction upon the contemnor did. *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1026 (2003); *Valencia v. Valencia*, 71 Ill. 2d 220, 228 (1978) ("Generally, it is held that where no punishment has been imposed an order adjudicating one to be in contempt is not final and is not reviewable"); *Lester v. Berkowitz*, 125 Ill. 307, 308 (1888) ("Had the court attempted to enforce

- 11 -

obedience to its order by the imposition of a fine \*\*\*, or by a definitive term of imprisonment, as for contempt of court, the judgment of the court imposing such fine or imprisonment would be final, and from which an appeal might be taken"). A contempt judgment that imposes a sanction disposes of the independent contempt proceeding in its entirety. Ill. S. Ct. R. 304(b), Committee Comments (September 1988). Thus, as of February 21, 2020, there was a final, appealable order when the court held Washington in contempt and attempted to enforce his compliance with the payment order by committing him to jail.

¶ 29    According to Rule 304(b)(5), "[t]he time in which a notice of appeal may be filed from a judgment or order appealable under this Rule 304(b) shall be as provided in Rule 303. Ill. S. Ct. R. 304 (eff. Mar. 8, 2016). Rule 303 provides that the "notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from." Ill. S. Cr. R. 303(a)(1) (eff. July 1, 2017). This means that orders that come within the scope of Rule 304(b), including contempt citations, must be appealed within 30 days of their entry or appeal is barred. *Revolution Portfolio*, 341 Ill. App. 3d at 1025 (citing *Longo v. Globe Auto Recycling, Inc.*, 318 Ill. App. 3d 1028, 1036 (citing Rule 304(b)(5), now found at Ill. S. Ct. Rule 304(b)(5) (eff. Mar. 8, 2016))). See *A.M. Realty Western L.L.C., v. MSMC Realty L.L.C.*, 2016 IL App (1st) 151087, ¶ 70 (appellate court jurisdiction is dependent on the appellant's timely filing of a notice of appeal.)

> "The rationale for authorizing immediate appellate jurisdiction under Rule 304(b)(5) upon the entry of a contempt order imposing a penalty does not apply when a contempt petition is merely pending before the court. Litigation proceedings may linger for years before a final judgment [is rendered on all issues in a case] and [in the meantime] the subject of a contempt judgment may face incarceration or forfeiture of property. It would

be unreasonable to force a party to wait until final judgment on all issues before allowing an appeal on the contempt ruling. Rule 304(b)(5) codifies this distinction by allowing the contemnor to seek immediate review of the finding and sanction imposed." *In re Marriage of Gutman*, 232 Ill. 2d 145, 153 (2008).

¶ 30 The deadline for Washington to appeal the circuit court's Friday, February 21, 2020 order that imposed the penalty of commitment to the Cook County jail was 30 days later. Since the thirtieth day was Sunday, March 22, 2020, Washington needed to file his notice of appeal no later than Monday, March 23, 2020. Washington filed a notice of appeal in the circuit court on March 29, 2021. He missed the Rule 304(b) deadline to appeal by more than a year. Therefore, even though the contempt and commitment orders were final, appealable orders, we lack jurisdiction over them. *A.M. Realty*, 2016 IL App (1st) 151087, ¶ 70. Thus, the first four of the five orders that Washington cites for our jurisdiction do not convey appellate jurisdiction.

¶ 31 The motion that Washington filed in the circuit court on December 8, 2020 to quash the order of commitment, on grounds that in October 2020 he filed for Chapter 13 protection (for the third time), did not revive or extend the appellate deadline which had already passed. Actually, filing a motion to quash an attachment order is considered the initiation of a separate proceeding, and an order denying a motion to quash an attachment order is considered a final order that comes within the scope of a rule that we have not yet discussed, Rule 304(a). Ill. S. Ct. R. 304(a) (eff. March 8, 2016). *Revolution Portfolio*, 341 Ill. App. 3d at 1026 (citing *Old Kent Bank v. Stoller*, 254 Ill. App. 3d 1085, 1092 (1993) ("if a creditor is permitted to appeal an order which releases property from attachment prior to a final determination in the suit, the debtor, whose property has been seized, should be granted the same latitude to appeal, prior to a final determination in the

action, any order which refuses to release his property from attachment")). Rule 304(a) provides for the appeal of certain final orders only if the circuit court adds an express finding that there is no just reason for delaying enforcement or appeal. Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016); *People ex rel. Block*, 267 Ill. App. 3d at 356. On February 26, 2021, when the circuit court denied Washington's motion to quash, Washington did not request that the order include 304(a) language. Shortly thereafter, on March 2, 2021, the circuit court entered an order directing the sheriff to immediately place the commitment order into LEADS and allocating any and all associated costs to Washington. The March 2, 2021 order also lacks Rule 304(a) language. This is the fifth of the five orders that Washington relies on for appellate jurisdiction. Although Washington appealed within 30 days on March 29, 2021, the omission of Rule 304(a) language deprives us of jurisdiction to review the February and March 2021 orders.

¶ 32     Furthermore, the record before us does not indicate that the circuit court has since "resolve[d] every right, liability or matter raised" (*Marsh v. Evangelical Covenant Church of Hinsdale*, 138 Ill. 2d 458, 465 (1990)) in this domestic relations action between Sivels and Washington about their remaining minor, unemancipated child. Accordingly, none of the orders that Washington challenges are now appealable and we lack jurisdiction to review their merits at this time.

¶ 33     For these reasons, we dismiss the untimely appeal.

¶ 34     Appeal dismissed.