FREMONT COMPENSATION INSURANCE COMPANY, as Successor in Interest to Casualty Insurance Company, Plaintiff and Counterdefendant, v. ACE-CHICAGO GREAT DANE CORPORATION, Defendant and Counterplaintiff and Third-Party Plaintiff-Appellant (Fred Grossman, Defendant; Potomac Insurance Company of Illinois, Third-Party Defendant-Appellee).

First District (4th Division)   No. 1—98—2403

Opinion filed March 31, 1999.

Hilfman & Fogel, of Chicago (William F. Martin, of counsel), for appellant.

Matyas & Morris, of Chicago (Patricia Janezich, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

This appeal arises from the circuit court's determination in a declaratory judgment proceeding that Potomac Insurance Company of Illinois (Potomac) is under no obligation to defend or indemnify its insured, Ace-Chicago Great Dane Corporation (Ace), in a separate action for negligent spoliation of evidence filed by Fred Grossman. Our analysis of the issues presented requires a brief recitation of the events leading up to this litigation and the procedural history of the case.

In 1992, Grossman filed suit in the circuit court of Cook County seeking damages for injuries he allegedly sustained when he fell from a ladder manufactured by Berg Ladders, Inc. (Berg). Grossman's action proceeded only against Berg until December 27, 1996, when he filed an amended complaint joining Ace as a party defendant, asserting a claim for negligent spoliation of evidence against it.

Ace tendered the defense of the Grossman action to its insurers, Casualty Insurance Company (Casualty) and Potomac. Casualty accepted the tender and undertook the defense of Ace subject to a reservation of rights. Potomac denied coverage. Thereafter, Fremont Compensation Insurance Company (Fremont), as successor in interest to Casualty, filed the instant action seeking a judgment declaring that Casualty is not liable under its policy of insurance for any judgment, award, or settlement sought against Ace in connection with Grossman's negligent spoliation of evidence claim and is not obligated to defend Ace in connection with that claim. Ace answered Fremont's complaint and filed a counterclaim against Fremont and a third-party claim against Potomac. For its part, Ace sought a judgment declaring that Casualty is obligated under its policy of insurance to both defend and indemnify it from Grossman's action or, in the alternative, that Potomac is so obligated under its policy of insurance.

Initially, Potomac responded to Ace's third-party complaint by moving for dismissal pursuant to section 2—615 of the Code of Civil Procedure (Code) (735 ILCS 5/2—615 (West 1996)), alleging that Ace had failed to plead facts in support of the proposition that the events alleged in Grossman's suit occurred within the period covered by its policy. However, Potomac withdrew its section 2—615 motion prior to obtaining a ruling. After securing leave of court, Potomac filed a section 2—619 motion (735 ILCS 5/2—619 (West 1996)), seeking an involuntary dismissal of Ace's third-party complaint. Potomac's section 2—619 motion was supported by its own policy of insurance and the deposition of Robert E. Nealon, taken in Grossman's underlying suit.

The trial court granted Potomac's section 2—619 motion, dismissed Ace's claim against Potomac, and found no just reason to delay enforcement or appeal from its order. Ace filed a timely notice of appeal, invoking our jurisdiction under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). For the reasons that follow, we affirm.

Since Ace's claim against Potomac was dismissed pursuant to a section 2—619 motion, our review is *de novo. Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116, 619 N.E.2d 732 (1993). As a preliminary matter however, we are compelled to comment on certain procedural deficiencies in Potomac's motion.

Potomac's section 2—619 motion appears to assert two grounds for relief. First, the motion asserts that Ace's claim against Potomac "fails to specifically plead facts to show that the alleged spoliation of evidence is due to an occurrence within the policy period." Second, the motion asserts that Nealon's deposition established that the subject ladder was in Ace's possession on August 21, 1991, and "therefore, the ladder was not disposed [of] until after the policy term of Ace-Chicago's policy of Commercial General Liability Coverage with Potomac."

■ The question of whether Ace pled sufficient facts to show that the events alleged in Grossman's amended complaint occurred within the term of Potomac's policy pertains to the issue of whether Ace's claim states a cause of action against Potomac. Allegations pertaining to a complaint's failure to state a cause of action must be raised pursuant to section 2—615 of the Code, not section 2—619. *Smith v. Chemical Personnel Search, Inc.*, 215 Ill. App. 3d 1078, 1081, 576 N.E.2d 340 (1991); *Rowan v. Novotny*, 157 Ill. App. 3d 691, 694, 510 N.E.2d 1111 (1987). A section 2—619 motion admits the legal sufficiency of the complaint to which it is addressed. *Kedzie & 103rd Currency Exchange*, 156 Ill. 2d at 115. However, because Ace had the opportunity to respond to the merits of Potomac's hybrid motion and in fact did so before the trial court, we will consider each of the issues raised in the interest of judicial economy. See *Smith*, 215 Ill. App. 3d at 1081-82.

■ "An insurer's duty to defend its insured is much broader than its duty to indemnify." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 125, 607 N.E.2d 1204 (1992). If it is determined that an insurer has a duty to defend its insured, its duty to indemnify will not be determined until the adjudication of the action to be defended. *Outboard Marine*, 154 Ill. 2d at 127-28. However, where a court properly determines that an insurer has no duty to defend, it may also determine that the insurer has no duty to indemnify. *State Farm Fire & Casualty Co. v. Hatherley*, 250 Ill. App. 3d 333, 336, 621 N.E.2d 39 (1993).

■ In determining whether an insurer is obligated to defend its insured, we generally compare the allegations of the underlying complaint to the relevant provisions of the insurance policy. *American States Insurance Co. v. Koloms*, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997); *Outboard Marine*, 154 Ill. 2d at 125. "The allegations in the underlying complaint must be liberally construed in favor of the insured." *Outboard Marine*, 154 Ill. 2d at 125; see also *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 74, 578 N.E.2d 926 (1991). If the underlying complaint alleges facts even potentially within the policy's language, the insurer is obligated to defend its insured (*Koloms*, 177 Ill. 2d at 479), even if the allegations in the underlying complaint are groundless, false, or fraudulent (*Wilkin Insulation Co.*, 144 Ill. 2d at 73).

The commercial general liability insurance policy issued by Potomac, and upon which Ace's third-party claim is based, insured Ace for certain specified bodily injury and property damage claims arising from events occurring during the period from July 29, 1990, to July 29, 1991. Grossman's negligent spoliation of evidence claim against

Ace (hereinafter referred to as the underlying complaint) alleges, *inter alia*, that on July 26, 1991, the day of Grossman's injury, an employee of Ace took possession of the ladder from which Grossman fell. According to Grossman's underlying complaint, Ace "knew or should have known that the ladder was a material piece of evidence" in his lawsuit against Berg; but, nevertheless, "[s]ubsequent to July 26, 1991, *** Ace *** disposed of said ladder, without notifying Fred Grossman or his attorneys." The truth or falsity of these facts is not at issue here. Ace has alleged the content of Grossman's underlying complaint and the fact that these allegations appear therein must be taken as true, regardless of whether Potomac's motion is viewed as a section 2—615 motion (*Ziemba v. Mierzwa*, 142 Ill. 2d 42, 46-47, 566 N.E.2d 1365 (1991)) or a section 2—619 motion (*Storm & Associates, Ltd. v. Cuculich*, 298 Ill. App. 3d 1040, 1047, 700 N.E.2d 202 (1998)).

Since Grossman's underlying complaint alleged that Ace disposed of the ladder "subsequent to July 26, 1991," and Potomac's policy covered a term ending on July 29, 1991, Grossman's underlying complaint, when liberally construed in favor of Ace, alleges an event potentially occurring within the policy term. Consequently, we reject Potomac's section 2—615 argument that Ace's claim fails to plead sufficient facts to show that the events alleged in Grossman's underlying complaint potentially occurred within the term of its policy. Our conclusion in this regard is further supported by the proposition that the pleading requirements of a complaint alleging potential insurance coverage are minimal. *Travelers Insurance Cos. v. P.C. Quote, Inc.*, 211 Ill. App. 3d 719, 724-25, 570 N.E.2d 614 (1991).

Next, we will address the issue of whether Potomac was entitled to relief pursuant to section 2—619. Motions brought pursuant to section 2—619 must be limited to one of the nine grounds for dismissal enumerated therein. *Rowan*, 157 Ill. App. 3d at 694. Only section 2—619(a)(9), which permits dismissal where "the claim asserted *** is barred by other affirmative matter avoiding the legal effect of or defeating the claim" (735 ILCS 5/2—619(a)(9) (West 1996)), could conceivably apply to the issues raised in Potomac's motion. The phrase "affirmative matter" as contained in section 2—619(a)(9) encompasses any defense other than a negation of the essential allegations of the cause of action. *Kedzie & 103rd Currency Exchange*, 156 Ill. 2d at 115.

Based upon Nealon's deposition testimony, Potomac argued, and the trial court agreed, that Ace's alleged disposal of the ladder asserted in Grossman's underlying complaint could not have occurred within the period covered by Potomac's policy. Nealon testified that he was assigned to investigate Grossman's accident by Fremont. Accord-

ing to Nealon, he went to Ace's facility on August 21, 1991, and personally saw the subject ladder in an enclosed storage area. In urging reversal, Ace argues that: (1) the trial court erred in considering Nealon's deposition; (2) the allegations of Grossman's underlying complaint potentially relate to an occurrence falling within the term of Potomac's policy and, consequently, Potomac is obligated to defend the action; (3) any determination of Potomac's duty to indemnify is premature prior to an adjudication of Grossman's underlying claim; and (4) the trial erred in granting Potomac's request for a Rule 304(a) finding.

First, we will address Ace's contention that the trial court should not have found that no just reason existed to delay an appeal from its order. There can be little question that the trial court's order granting Potomac's motion was a final judgment which disposed of Ace's claim against Potomac. It is also clear from the record that, at the time of the entry of this order, other claims remained pending. Consequently, an appeal from the order dismissing Ace's claim against Potomac could only be taken prior to the resolution of the remaining claims if the court made an express finding that no just reason existed to delay an appeal. 155 Ill. 2d R. 304(a); *Marsh v. Evangelical Covenant Church*, 138 Ill. 2d 458, 464, 563 N.E.2d 459 (1990). Ace argues, however, that it should have had an opportunity to present its alternative claims against Casualty and Potomac "for a single determination of the collective issues" and that the trial court's entry of a Rule 304(a) finding subjects it to piecemeal litigation.

The decision to enter a Rule 304(a) finding so as to permit an immediate appeal from a final judgment that does not dispose of all of the claims in a pending action is one committed to the sound discretion of the trial court. In the context of Rule 304(a), a trial court's finding that no just reason exists to delay an appeal is nothing more than a discretionary determination that permitting an immediate appeal, under the circumstances, would be desirable. *Old Kent Bank v. Stoller*, 254 Ill. App. 3d 1085, 1093, 627 N.E.2d 265 (1993). We find no abuse of that discretion in this case, especially in light of the fact that when, upon ruling on Potomac's motion, the trial judge commented that he could not see any dispute concerning whether the subject ladder was lost during the term of Potomac's policy, Ace's attorney responded: "I don't either, Judge."

Next, we will address the issue of whether the trial court should have considered the Nealon deposition in ruling on Potomac's motion. According to Ace, Potomac "attempted to circumvent Rule [*sic*] 2—619 by attaching a deposition from a different action." Ace also argues that the deposition was "a collection of leading questions, guesses and hearsay."

■ Although section 2—619 speaks only of supporting a motion for involuntary dismissal with affidavits (735 ILCS 5/2—619(a) (West 1996)), it has long been held that discovery depositions may also be used. See *Kedzie & 103rd Currency Exchange*, 156 Ill. 2d at 116; *Sierens v. Clausen*, 60 Ill. 2d 585, 588, 328 N.E.2d 559 (1975). In point of fact, Supreme Court Rule 212(a)(4) (134 Ill. 2d R. 212(a)(4)) provides that discovery depositions may be used "for any purpose for which an affidavit may be used." There is no *per se* rule prohibiting a deposition taken in one case from being used in another. The allowance of such a procedure seems to turn on the question of whether the party against whose interest the deposition is being used had notice of the deposition in the other action and an opportunity to cross-examine the deponent. See *Porro v. P.T. Ferro Construction Co.*, 72 Ill. App. 3d 377, 382, 390 N.E.2d 958 (1979). The record in this case reveals that the attorney representing Ace in the Grossman action was present at Nealon's deposition. Our observations on this issue aside, we believe that Ace's arguments addressed to the propriety of the trial court's consideration of the Nealon deposition have been waived.

■ As stated earlier, Potomac supported its section 2—619 motion with Nealon's deposition. Ace responded to that motion in writing, addressing the merits of the motion. Ace filed no motion to strike Nealon's deposition, nor did its written response raise any objection to the court's consideration of the deposition. It was not until Potomac's motion was fully briefed and before the court for argument that Ace first raised the objections that it argues before us. During his oral presentation before the trial court, Ace's attorney interposed a general hearsay objection without identifying which portion of Nealon's testimony it was addressed to and also objected to the court's consideration of the Nealon deposition because Berg's attorney was not in attendance. Further, the record fails to reflect that Ace ever received a ruling on its objection.

Any objection to the sufficiency of evidentiary material submitted in support of a section 2—619 motion should be raised by either a motion to strike the evidentiary material or by a motion to strike the section 2—619 motion, pointing out specifically the defects of which the movant complains. See 735 ILCS 5/2—615(a) (West 1996); *Kearns v. Board of Education of North Palos Elementary School District No. 117*, 73 Ill. App. 3d 907, 913-14, 392 N.E.2d 148 (1979). Even if we were to find that Ace's oral objection at the time of the hearing on Potomac's motion was sufficient to raise the issue, the fact remains that Ace never obtained a ruling on the objection. When a party objects to evidentiary material submitted in support of a section 2—619 motion, it is the party's obligation to secure a ruling on the objection, and the

failure to obtain such a ruling operates as a waiver of the objection. *Intercontinental Parts, Inc. v. Caterpillar, Inc.*, 260 Ill. App. 3d 1085, 1090, 631 N.E.2d 1258 (1994).

We turn now to the inquiry we perceive to be the major issue presented in this appeal, namely: Under what circumstances, if ever, can a trial court in a declaratory judgment action resort to extrinsic evidence to resolve the issue of whether an insurance company is obligated to defend and indemnify its insured in a pending and undetermined tort action?

■ "In determining whether the insurer owes a duty to the insured to defend an action brought against him, it is *the general rule* that the allegations of the [underlying] complaint determine the duty." (Emphasis added.) *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 193, 355 N.E.2d 24 (1976); see also *Thornton v. Paul*, 74 Ill. 2d 132, 144, 384 N.E.2d 335 (1978). Although it is true that an insurer's duty to defend flows in the first instance from the allegations of the underlying complaint, this "general rule" does not support the proposition that a court, in a declaratory judgment proceeding where an insurer's duty to defend is at issue, may never look beyond the allegations of the underlying complaint. *Fidelity & Casualty Co. v. Envirodyne Engineers, Inc.*, 122 Ill. App. 3d 301, 304, 461 N.E.2d 471 (1983).

■ The declaratory judgment statute vests the trial court with discretion in deciding whether to grant declaratory relief. 735 ILCS 5/2—701 (West 1996). A trial court abuses that discretion in issuing a declaration of rights and duties under an insurance policy where the questions necessary to determine coverage also constitute "ultimate facts upon which recovery is predicated" in an unresolved suit against the insured arising from the same occurrence giving rise to the claim of coverage. *Peppers*, 64 Ill. 2d at 197; see also *Thornton*, 74 Ill. 2d at 158-59. It has even been suggested that an abuse of discretion will be found if, in the context of a declaratory judgment action concerning insurance coverage, the court determines any factual matter that might be relevant to the issues in the underlying litigation. *Millers Mutual Insurance Ass'n v. Ainsworth Seed Co.*, 194 Ill. App. 3d 888, 891, 552 N.E.2d 254 (1990). In *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 307, the court analyzed the holdings in *Peppers* and *Thornton* and came to the following conclusions, with which we agree:

> "Both *Peppers* and *Thornton* are instructive as to what matters cannot be determined in a declaratory judgment proceeding prior to the completion of the underlying action. *Peppers* states that an ultimate fact upon which recovery is predicated in the underlying case may not be addressed. The court's language suggests that an ultimate fact is one which would estop the plaintiff in the underly-

ing case from pursuing one of his theories of recovery. *Thornton* implies that an ultimate fact is one in which 'an issue critical to the insured's liability' in the underlying case is determined. Apparently only then would the inequities surface in regard to alignment of the parties and the order and burden of proof, because those matters necessarily arise in any declaratory judgment proceeding brought before completion of the underlying lawsuit.''

However, the holding in *Peppers* and its progeny presents no impediment to a court's determination of factual issues relevant to an insurer's duty to defend its insured in a pending and unresolved suit when those factual determinations do not impact upon the underlying plaintiff's ability to pursue a theory of liability or resolve any issue critical to the insured's liability in the underlying litigation. Further, both *Ainsworth Seed Co.*, 194 Ill. App. 3d at 891-93, and *Envirodyne Engineers, Inc.*, 122 Ill. App. 3d at 306-08, stand for the proposition that, if a court in a declaratory judgment action is permitted to make such factual determinations prior to the resolution of the underlying litigation, the court may consider extrinsic evidence bearing on the question of coverage and is not restricted only to a consideration of the allegations of the complaint in the underlying litigation and the terms of the insured's policy.

█ Having stated the legal principles upon which we rely, our next step is to examine the record before us to determine if the factual finding that formed the necessary predicate of the trial court's order dismissing Ace's claim against Potomac impacts upon Grossman's ability to pursue his claim against Ace or resolves any issue critical to Ace's liability in that underlying litigation.

In granting Potomac's motion, the trial court necessarily found that Nealon's unrebutted deposition testimony established that the subject ladder was still in Ace's possession as of August 21, 1991, a date subsequent to the expiration of the period covered by Potomac's policy of insurance. We do not see how this determination could estop Grossman from pursuing his negligent spoliation of evidence claim against Ace or estop him from raising any issue relevant thereto, nor do we find that it acts to adjudicate any question critical to Ace's liability. Grossman alleged in his underlying complaint that Ace disposed of the ladder "subsequent to July 26, 1991." The trial court's determination in this case in no way resolves the question of whether Ace did in fact dispose of the ladder or any other issue relating to Ace's alleged liability to Grossman. The trial court's order in this case merely stands as an adjudication that the ladder was still in Ace's possession on August 21, 1991, taking the occurrence alleged in Grossman's underlying complaint outside the period of time covered by Potomac's policy.

Taking all well pleaded facts in Ace's third-party complaint as true and construing the Nealon deposition in the light most favorable to Ace, we find no disputed issue of fact on the question of whether Ace still had possession of the subject ladder after the expiration of the term covered by Potomac's policy. When, as in this case, the undisputed evidence shows that an occurrence did not fall within the period of time for which insurance coverage is provided, the insurer is not under a duty to either defend or indemnify. We, therefore, affirm the order of the trial court dismissing Ace's third-party declaratory judgment action against Potomac.

Affirmed.

SOUTH, P.J., and WOLFSON, J., concur.