Sixth Division
March 31, 2008

No. 1-05-0403

| | | |
|---|---|---|
| AMERICAN ECONOMY INSURANCE COMPANY, | ) | Appeal from the Circuit Court |
| | ) | of Cook County |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| HOLABIRD AND ROOT, | ) | |
| | ) | 99 CH 04867 |
| Defendant-Appellee | ) | |
| | ) | |
| (DePaul University, The City of Chicago, L&L Engineers, | ) | |
| and Caroline Cogtella, | ) | Honorable |
| | ) | Aaron Jaffe, |
| Defendants). | ) | Judge Presiding |

PRESIDING JUSTICE McBRIDE delivered the opinion of the court:

Defendant Caroline Cogtella filed a lawsuit against defendants DePaul University (DePaul), L&L Engineers and Holabird & Root (H&R), alleging that she suffered bodily injury due to her exposure to the fluorescent lighting selected and installed in DePaul University's Goldblatt building. H&R tendered its defense of Cogtella's complaint to plaintiff American Economy Insurance Co. (American Economy) because American Economy was the insurer of Metrick Electric Co. (Metrick), the electrical subcontractor that H&R hired to install the lighting at the Goldblatt building and H&R was a named additional insured on Metrick's insurance policy. American Economy denied coverage and filed this declaratory judgment action as to its duty to defend in the Cogtella litigation. The trial court, in considering cross-motions for summary judgment, held that American Economy had an obligation to defend H&R in the Cogtella litigation.

1-05-0403

American Economy appeals, arguing that the trial court erred in finding that American Economy had a duty to defend H&R because the complaint filed by Cogtella did not allege any negligence by Metrick and because the trial court improperly considered a third-party complaint filed by DePaul to find such a duty.

In December 1995, Cogtella filed her complaint for negligence, professional negligence, and negligent infliction of emotional distress against H&R, DePaul, and L&L Engineers. Cogtella's complaint alleged the following facts.

On or about November 1, 1991, the City of Chicago (City) and DePaul entered into an agreement in which the City sold real estate known as the Goldblatt building to DePaul, and DePaul, in turn, granted the City a leasehold interest for a portion of the building for City offices. Pursuant to that agreement, the City contracted with H&R to be the architect and general contractor for the design and construction of the City's space in the Goldblatt building. L&L Engineers was the electrical subcontractor on this project. All plans and specifications for the design and construction of the City's space were submitted to DePaul for approval.

Cogtella alleged that defendants "selected and installed fluorescent light fixtures and lights" in the City's space. "However, they did not elect to shield or filter the lights with commercially available and reasonably priced diffusers or filters that would diffuse or reduce to a safe level the ultraviolet (UV) rays emitted by the fluorescent lights." Cogtella further claimed that, "At no time during the planning, preparation of specifications, or construction of the City's leasehold space did Defendants consider the possible health effects on people occupying the City's space when they decided to install fluorescent lighting in the space."

2

1-05-0403

Cogtella worked as the risk manager for the City's department of finance, risk management office, which moved into a portion of the City's space in the Goldblatt building. Cogtella had been previously diagnosed with lupus erythematosus, an autoimmune disease which causes inflammation of various parts of the body, especially the skin, joints, blood and kidneys. At the time Cogtella began working in the Goldblatt building, her illness was under control and did not cause any impairment in her ability to perform her job. However, within days of Cogtella's move to the new work area in the Goldblatt building, she experienced a sudden, serious illness. She suffered severe erythema and edema of her face, neck and hands associated with first degree burns, skin lesions, hair loss, severe joint pain, vision impairment, and exhaustion. Cogtella alleged that this sudden illness was caused by her exposure to the unfiltered and undiffused fluorescent lighting in her work area.

In count I, Cogtella pled a claim of negligent infliction of emotional distress and alleged that defendants had a duty to provide a safe work area, free from hazards, for all people occupying the Goldblatt building and that they carelessly and negligently breached their duty and caused severe physical harm to Cogtella. These negligent acts and omissions proximately caused Cogtella to suffer emotional distress of both a physical and mental nature and she will continue to suffer severe emotional and physical illness and financial harm. In count II, Cogtella presented a claim of professional negligence against H&R and alleged that H&R owed Cogtella a duty to design and construct the City's space in a reasonably safe manner and was guilty of one or more of the following careless and negligent acts or omissions:

"a. Failed to reasonably educate itself about current medical

3

and scientific information and literature available regarding the dangers of exposure to UV emissions from fluorescent lights;

    b. Selected unsafe fluorescent lighting fixtures and lights which it designated to be installed in the City's leasehold space;

    c. Failed to reasonably educate itself about current medical and scientific literature on the subject of UV radiation from fluorescent lights;

    d. Negligently selected lighting subcontractor, Defendant L&L, which was not knowledgeable regarding the health effects of unfiltered fluorescent lighting and the appropriate selection of the types of fluorescent lights which would minimize exposure to harmful UV rays from the fluorescent light selected for the City's leasehold space;

    e. Undertook no testing of, monitoring of, or any type of scientific evaluation of the level of harmful UV emissions emitted from the fluorescent lights installed in the City's leasehold space;

    f. Was otherwise careless and negligent."

In June 1997, DePaul filed a third-party complaint against Metrick and the City. In count II, DePaul alleged that Metrick "was in charge of the installation of the electrical light fixtures in [Cogtella's] work station and on the fourth floor of the DePaul Center." DePaul further alleged that Metrick owed a duty to Cogtella to install electrical lighting fixtures that would not cause her

1-05-0403

physical, mental or emotional illness.  DePaul claimed that Metrick was guilty of the following

careless and negligent acts and/or omissions:

"a. Failed to reasonably educate itself regarding the

potential danger or harm caused by exposure to ultraviolet ray

emissions from florescent lights which they installed into buildings;

b. Failed to ensure that the florescent lighting fixtures and

light installed in the City's work space on the fourth floor of the

DePaul Center and in [Cogtella's] work station were safe so as not

to cause physical, mental and emotion illness to its workers;

c. Failed to properly consult with its lighting engineer, L&L

Engineers, and its architect, Holabird & Root, in order to ensure

that the florescent lights and lighting systems chosen by the City of

Chicago for [Cogtella's] work station and the fourth floor of the

Goldblatt building were safe and did not present a danger to the

City of Chicago employees occupying the City of Chicago's

leasehold space; and

d. Was otherwise careless and negligent."

In March 1999, American Economy filed its complaint for declaratory judgment, asking

the trial court to find that H&R, DePaul,[1] the City, and L&L Engineers did not qualify as

---

[1] American Economy has appealed the granting of summary judgment in favor of DePaul in case No. 1-05-4027, which is pending before this division.

5

additional insureds on Metrick's policy and, therefore, American Economy had no duty to defend or indemnify the defendants in connection with the Cogtella litigation.

American Economy and Metrick entered into a contract for general liability insurance, effective October 1, 1993, to October 1, 1994. H&R, DePaul, L&L Engineers and the City were added as additional insureds under the policy pursuant to an additional insured endorsement, which provided as follows:

> "WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of 'your work' for that insured by or for you."

The Cogtella litigation was settled in January 2000. In January 2004, the trial court denied American Economy's motion for summary judgment and granted H&R's cross-motion for summary judgment. In November 2004, the trial court entered a money judgment in the amount of $173,789.40, in favor of H&R. This appeal followed.

The issue before us on appeal is whether American Economy has a duty to defend H&R as an additional insured under the terms of the American Economy policy. American Economy maintains that because Cogtella did not specifically name Metrick in the underlying complaint or specifically allege any negligence on Metrick's part, it does not have a duty to defend H&R. H&R responds that because the underlying complaint alleges facts that the injuries sustained by Cogtella arose or potentially arose out of the work, specifically the installation of the lighting, which the third-party complaint alleges was Metrick's task, there is a duty to defend.

The construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment. Crum & Forster Managers Corp. v. Resolution Trust Corp., 156 Ill. 2d 384, 391 (1993). Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2004). "Although summary judgment is a drastic means of disposing of litigation, it is an appropriate measure in cases where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." Crum & Forster Managers Corp., 156 Ill. 2d at 390-91. We review cases involving summary judgment *de novo*. Ragan v. Columbia Mutual Insurance Co., 183 Ill. 2d 342, 349 (1998).

The primary function of the court when construing an insurance policy is to ascertain and enforce the intentions of the parties as expressed in the agreement. Crum & Forster Managers Corp., 156 Ill. 2d at 391. "To ascertain the intent of the parties and the meaning of the words used in the insurance policy, the court must construe the policy as a whole, taking into account the type of insurance for which the parties have contracted, the risks undertaken and purchased, the subject matter that is insured and the purposes of the entire contract." Crum & Forster Managers Corp., 156 Ill. 2d at 391.

"To determine an insurer's duty to defend its insured, a court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or potentially within

policy coverage, the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent." Northbrook Property & Casualty Co. v. Transportation Joint Agreement, 194 Ill. 2d 96, 98 (2000). "The insurer's duty to defend does not depend upon a sufficient suggestion of liability raised in the complaint; instead, the insurer has the duty to defend unless the allegations of the underlying complaint demonstrate that the plaintiff in the underlying suit will not be able to prove the insured liable, under any theory supported by the complaint, without also proving facts that show the loss falls outside the coverage of the insurance policy." Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co., 337 Ill. App. 3d 356, 361 (2003). " '[T]he duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy. The question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.' " Illinois Emcasco Insurance, 337 Ill. App. 3d at 361, quoting International Insurance Co. v. Rollprint Packaging Products, Inc., 312 Ill. App. 3d 998, 1007 (2000).

"As the threshold for pleading a duty to defend is low, any doubt with regard to such duty is to be resolved in favor of the insured." United Services Automobile Ass'n v. Dare, 357 Ill. App. 3d 955, 963 (2005). "[I]nsurance policies are to be liberally construed in favor of coverage, and where an ambiguity exists in the insurance contract, it will be resolved in favor of the insured and against the insurer." Dare, 357 Ill. App. 3d at 963-64. Further, "[p]rovisions in an insurance policy that limit or exclude coverage are also construed liberally in favor of the insured and against the insurer." Dare, 357 Ill. App. 3d at 964. "The insurer's duty to defend is much broader than its duty to indemnify its insured." Crum & Forster Managers Corp., 156 Ill. 2d at 393-94.

In order to determine whether American Economy is required to defend H&R as an additional insured, we first look at the language of the additional insured endorsement.  Under the policy, American Economy is required to defend H&R as an additional insured of Metrick "but only with respect to liability arising out of 'your work' for [H&R] by or for [Metrick.]"  According to the definition in the policy:

> " 'Your work' means:
>
> a. Work or operations performed by you or on your behalf;
>
> and
>
> b. Materials, parts or equipment furnished in connection with such work or operations.
>
> 'Your work' includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in a. or b. above."

Illinois courts have held that the phrase "arising out of" is "both broad and vague, and must be liberally construed in favor of the insured; accordingly, 'but for' causation, not necessarily proximate causation, satisfies this language." Maryland Casualty Co. v. Chicago & North Western Transportation Co., 126 Ill. App. 3d 150, 154 (1984); see also Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co., 150 Ill. App. 3d 472, 475 (1986).  Further, " '[a]rising out of' has been held to mean 'originating from,' 'having its origin in,' 'growing out [of]' and 'flowing from.' " Maryland Casualty Co., 126 Ill. App. 3d at 154, quoting Western Casualty & Surety Co. v. Branson, 463 F. Supp. 1208, 1210 (E.D. 1979).  Therefore, in order to

establish the obligation to defend under the policy, H&R needs only to show that "but for" the work performed by Metrick, it is potentially liable to Cogtella.

The underlying complaint alleged that it was the selection and the installation of fluorescent lighting without UV diffusers that caused Cogtella's injuries. Although the underlying complaint does not mention Metrick's installation of the lighting, the third-party complaint filed by DePaul alleged that Metrick "was in charge of the installation of the electrical light fixtures in [Cogtella's] work station and on the fourth floor of the DePaul Center." American Economy contends that the trial court cannot look to the third-party complaint to ascertain Metrick's involvement, but is limited to the allegations in the Cogtella complaint and the subject policy. Thus, we determine whether the trial court may consider evidence beyond the underlying complaint, such as the third-party complaint filed here, in order to determine the duty to defend.

To begin our analysis, we turn to a long line of Illinois cases, beginning with Associated Indemnity Co. v. Insurance Co. of North America, 68 Ill. App. 3d 807 (1979), which has held that the trial court may consider evidence beyond the underlying complaint in determining an insurer's duty to defend. In Associated Indemnity, Wilson Driveaway, Inc. (Wilson), operated a service in which its employees would pick up a car in the Chicago area and drive it to any location in the United States that was requested by the customer. Robert Blond, one of Wilson's employees, was operating a car owned by Robinson Lyon Ford (Robinson) that was scheduled to be driven cross-country at a later date. While running some business errands in Chicago for Wilson, Blond struck a pedestrian. The pedestrian later sued Blond, Wilson, and Robinson for the injuries she sustained in the accident. Associated Indemnity, 68 Ill. App. 3d at 810-13.

10

Blond had an individual automobile liability insurance policy with Associated Indemnity Company (Associated). The Associated policy provided coverage to Blond "whenever driving a nonowned automobile so long as his operation of the automobile 'is with the permission, or reasonably believed to be with the permission, of the owner.' " Associated Indemnity, 68 Ill. App. 3d at 811. However, the conditions section of the policy provided that "coverage with respect to a nonowned automobile is excess coverage over any other valid and collectible insurance." Associated Indemnity, 68 Ill. App. 3d at 811. Robinson was insured under a multiple liability policy issued by Insurance Company of North America (INA), which included a " 'Garage Insurance' " section that provided coverage for bodily injury caused by an occurrence that arose out of garage operations. Associated Indemnity, 68 Ill. App. 3d at 812. The garage coverage applied to " 'any person while using with the permission of the Named Insured, any automobile to which the insurance applies under the automobile hazard, provided his actual operation or *** use thereof is within the scope of such permission.' " Associated Indemnity, 68 Ill. App. 3d at 812-13. The INA policy contained an exclusion for operations performed by an independent contractor. Associated Indemnity, 68 Ill. App. 3d at 813.

Associated contacted INA to provide primary coverage for Blond in the underlying action with Associated to provide excess coverage. INA declined coverage under the policy's escape clause which provided that no damages were collectible for a garage customer if there was other valid insurance unless the other policy was insufficient to satisfy the financial responsibility. Associated Indemnity, 68 Ill. App. 3d at 813-14. Associated filed a declaratory judgment action. Meanwhile, Robinson moved for summary judgment in the underlying action, arguing Robinson

11

was not liable because Blond was acting as an independent contractor or as Robinsons's agent, but acting outside the scope of his authority. The trial court granted Robinson's motion for summary judgment without stating the basis for the ruling. INA then moved for summary judgment in the declaratory judgment action, which the trial court granted and held that Blond was acting as an independent contractor and that there was no duty to defend. Associated Indemnity, 68 Ill. App. 3d at 812-15.

On appeal, Associated sought a finding that INA was required to defend Blond in the underlying action and reimbursement for the money it had incurred in defending Blond. The reviewing court found:

> "[E]ven though the complaint, standing alone, may not
> fairly apprise the insurer that the third party is suing the putative
> insured on an occurrence potentially within the policy's coverage,
> the insurer is obligated to conduct the putative insured's defense if
> the insurer has knowledge of true but unpleaded facts, which, when
> taken together with the complaint's allegations, indicate that the
> claim is within or potentially within the policy's coverage."
> Associated Indemnity, 68 Ill. App. 3d at 816.

The court pointed out that "[t]o hold otherwise would allow the insurer to construct a formal fortress of the third party's pleadings and to retreat behind its walls, thereby successfully ignoring true but unpleaded facts within its knowledge that require it, under the insurance policy, to conduct the putative insured's defense." Associated Indemnity, 68 Ill. App. 3d at 816-17.

There, the court held that INA knew that true but unpleaded facts raised a reasonable possibility the underlying action against Blond was potentially within the policy's coverage. Associated Indemnity, 68 Ill. App. 3d at 818. These facts included Associated contacting INA within two months of the filing of the underlying action, that Blond was driving the car at the time of the accident, that the car belonged to Robinson and was in Wilson's care for delivery to Robinson. The court deduced that INA knew these facts because it was defending Robinson in the underlying action. Associated Indemnity, 68 Ill. App. 3d at 818-19. The court concluded that these facts should have apprised INA that the claim against Blond fell potentially within the policy's scope of coverage, and therefore, INA was obligated to provide Blond with a defense in the underlying action. Associated Indemnity, 68 Ill. App. 3d at 820.

However, the appellate court also found the trial court's adjudication of Blond's status as an independent contractor at the time of the accident was improper because it resolved an issue from the underlying action. A determination in the declaratory judgment proceedings that Blond was an independent contractor could collaterally estop the underlying plaintiff's ability to pursue her claims. Associated Indemnity, 68 Ill. App. 3d at 826.

Although the court in Associated Indemnity did not explicitly state that the trial court may consider evidence beyond the underlying complaint, its holding that a trial court may consider true but unpleaded facts supports our analysis and the subsequent cases that have built upon that principle.

In Fidelity & Casualty Company of New York v. Envirodyne Engineers, Inc., 122 Ill. App. 3d 301 (1983), the reviewing court expressly held that a trial court may look at evidence beyond

13

the underlying complaint when determining a duty to defend so long as that determination does not decide an ultimate fact of the underlying action. In that case, Ben Guzman was injured while working as an employee at a construction project where Envirodyne Engineers, Inc. (Envirodyne), was engaged as the project's consulting engineer. Guzman filed suit alleging a violation of the now-repealed Structural Work Act and negligence against Envirodyne and the Illinois State Toll Highway Authority (Highway Authority), which had hired Envirodyne. Envirodyne was insured under a comprehensive general liability policy from Fidelity & Casualty Company of New York (Fidelity). Envirodyne, 122 Ill. App. 3d at 302. An exclusion in the policy provided: " 'that the insurance does not apply to bodily injury or property damage arising out of the rendering of or the failure to render any professional services by or for the named insured including *** supervisory, inspection or engineering services.' " Envirodyne, 122 Ill. App. 3d at 302.

Fidelity defended Envirodyne in the Guzman case under a reservation of rights and filed a declaratory judgment action against Envirodyne. Fidelity contended that Envirodyne's actions at the construction project " 'were "supervisory, inspection or engineering services" within the purview of' " the exclusion in Fidelity policy. Envirodyne, 122 Ill. App. 3d at 303. Therefore, Envirodyne had no coverage under the policy and Fidelity was under no obligation to defend or indemnify Envirodyne in the Guzman case. Envirodyne, 122 Ill. App. 3d at 302-03. The trial court granted summary judgment in favor of Fidelity. Envirodyne, 122 Ill. App. 3d at 303.

On appeal, Envirodyne argued that the trial court improperly looked beyond the underlying complaint when it ruled on Fidelity's duty to defend Envirodyne. The parties agreed

14

that the potential for coverage turned on one portion of the underlying complaint, which alleged that Envirodyne and the Highway Authority " 'erected, constructed, placed or operated or caused to be erected, constructed, placed or operated, a certain scaffold.' " Envirodyne, 122 Ill. App. 3d at 303. "If Envirodyne physically constructed the scaffold, there would be coverage under the general liability policy; however, if Envirodyne acted only as a consulting engineer, there would be no coverage because of the exclusion." Envirodyne, 122 Ill. App. 3d at 303.

The reviewing court noted that the trial court, before granting summary judgment, looked at the contract between Envirodyne and the Highway Authority and the deposition of Envirodyne's assistant vice-president. The contract stated that "Envirodyne's duties at the construction site were limited to those of a consulting engineer." Enivrodyne, 122 Ill. App. 3d at 303. In his deposition, Envirodyne's assistant vice-president stated that "Envirodyne was an engineering firm, that Envirodyne was the general consultant for the Highway Authority and that he was unaware of any functions performed by Envirodyne at the job site other than those which were architectural or engineering in nature." Envirodyne, 122 Ill. App. 3d at 303-04. The trial court also considered the decision in Wheeler v. Aetna Casualty & Surety Co., 11 Ill. App. 3d 841, 854 (1973), in which the court took judicial notice " 'that employees of contractors and subcontractors place and operate hoists and that architects and their employees never do so.' " Envirodyne, 122 Ill. App. 3d at 304.

While the reviewing court noted that no other Illinois case had "squarely addressed" the issue of admitting evidence beyond the underlying complaint, it found the decision in Mid America Fire & Marine Insurance Co. v. Smith, 109 Ill. App. 3d 1121 (1982), supported its

15

conclusion that a trial court may consider evidence beyond the underlying complaint in declaratory judgment actions, to support its analysis. In Mid America, an insurer sought a declaratory judgment that it was not obligated to defend the insured because there was an applicable coverage exclusion. The trial court considered documents, including depositions, in ruling on the insurer's duty to defend in a motion for summary judgment. The appellate court also reviewed the deposition testimony in the record in affirming the summary judgment ruling. Mid America, 109 Ill. App. 3d at 1123-24.

The court in Envirodyne observed:

"It is certainly true that the duty to defend flows in the first instance from the allegations in the underlying complaint; this is the concern at the initial stage of the proceedings when an insurance company encounters the primary decision of whether to defend its insured. However, if an insurer opts to file a declaratory proceeding, we believe that it may properly challenge the existence of such a duty by offering evidence to prove that the insured's actions fell within the limitations of one of the policy's exclusions. [Citations.] The only time such evidence should not be permitted is when it tends to determine an issue crucial to the determination of the underlying lawsuit ***. If a crucial issue will not be determined, we see no reason why the party seeking a declaration of rights should not have the prerogative to present evidence that is accorded generally to a

16

party during a motion for summary judgment in a declaratory

proceeding. To require the trial court to look solely to the

complaint in the underlying action to determine coverage would

make the declaratory proceeding little more than a useless exercise

possessing no attendant benefit and would greatly diminish a

declaratory actions's purpose of settling and fixing the rights of the

parties." Envirodyne, 122 Ill. App. 3d at 304-05.

In applying this analysis to the case before it, the reviewing court did "not see where [the determination by the trial court that Envirodyne acted as the consulting engineer at the construction site] in any way estops the underlying plaintiff from raising a theory of recovery or decides any issue crucial to the underlying litigation." Envirodyne, 122 Ill. App. 3d at 308. The court affirmed the trial court's holding that Fidelity did not have a duty to defend because of the exclusion which applied and found that "the trial court properly determined the issue of coverage in the declaratory proceeding by looking to facts beyond those contained in the underlying complaint." Envirodyne, 122 Ill. App. 3d at 308.

Several subsequent cases have applied the ruling in Envirodyne to uphold the granting of summary judgment. In Safeco Insurance Co. v. Brimie, 163 Ill. App. 3d 200 (1987), the trial court granted summary judgment to Safeco Insurance Company (Safeco) in a declaratory judgment action. There, Richard McGehee, as administrator of the estate of Susanna McGehee, made a claim against Safeco, the insurer of Charles J. Brimie. The claim was premised on a motorbike accident in which Susanna was killed when Charles, her boyfriend, lost control of the

17

motorbike. McGehee later sued Charles and his parents, Charles M. and Bonnie Brimie, for negligent operation and negligent entrustment of the motorbike. Safeco sought a declaration that it had no obligation to defend the Brimies under their homeowners' policy because the occurrence did not take place on an insured location. The trial court subsequently granted Safeco's motion for summary judgment in the declaratory judgment action. Safeco, 163 Ill. App. 3d 202-03.

In affirming the trial court's ruling, the reviewing court found the case to be analogous to Envirodyne. "Here, as in [Envirodyne], Safeco sought a declaration that there was no coverage for the occurrence [under] Brimie's homeowner insurance policy and submitted certain photographic and deposition evidence at its summary judgment hearing. After reviewing the evidence and hearing the arguments of counsel, the trial court agreed with Safeco that there was no coverage as a matter of law and granted summary judgment in its favor." Safeco, 163 Ill. App. 3d at 206.

In Millers Mutual Insurance Ass'n v. Ainsworth Seed Co., 194 Ill. App. 3d 888 (1989), the Fourth District, on an appeal from a summary declaratory judgment, considered whether the duty to defend should be determined entirely upon on the terms of the insured's policy and the underlying complaint or whether extrinsic facts could be admitted, so long as those facts did not impact the issues in the underlying action. Sophia Cross filed a personal injury action against Ainsworth Seed Co. (ASC), and certain named employees for their negligent design, installation and construction of certain equipment that caused Cross' injury. Millers Mutual Insurance Association (Millers) issued a general liability policy to ASC and its employees. Millers filed a declaratory judgment action seeking a declaration as to its obligations in the underlying action.

18

Millers asserted that certain hazard exclusions in the policy prevented coverage. The trial court granted summary judgment in favor of ASC. Ainsworth Seed Co., 194 Ill. App. 3d at 889-90.

On appeal, the reviewing court discussed the decision in Envirodyne and found that opinion "persuasive." Ainsworth Seed Co., 194 Ill. App. 3d at 891-92. Accordingly, the court examined the allegations of the underlying complaint and the insurance policy as well as the affidavit of R. Clayton Ainsworth to determine coverage. In the affidavit, Ainsworth stated that the machine Cross was using was installed by a different company named Ainsworth Seed Company, the present ASC was not formed until three years later and never owned or operated the machine that injured Cross. The court also focused on the sections of the insurance policy relating to hazard exclusions. The court concluded that Millers was not obligated to defend ASC and its employees in the Cross action. Ainsworth Seed Co., 194 Ill. App. 3d at 893.

Fremont Compensation Insurance Co. v. Ace-Chicago Great Dane Corp., 304 Ill. App. 3d 734, 742 (1999), addressed "[u]nder what circumstances, if ever, can a trial court in a declaratory judgment action resort to extrinsic evidence to resolve the issue of whether an insurance company is obligated to defend and indemnify its insured in a pending and undetermined tort action." In that case, Fred Grossman filed the underlying action against Berg Ladders, Inc., seeking damages for injuries he sustained in a fall from a ladder. Grossman subsequently amended his complaint to include a claim of negligent spoliation of evidence against Ace-Chicago Great Dane Corporation (Ace), for disposing of the ladder that was the subject of the original action. Ace tendered its defense to insurers, Casualty Insurance Company (Casualty) and Potomac Insurance Company of Illinois (Potomac). Fremont Compensation Insurance Company (Fremont), as the successor in

interest to Casualty, filed a declaratory judgment action seeking a judgment that Casualty was not obligated to defend Ace in the underlying action. Ace filed a third-party claim against Potomac. Potomac sought an involuntary dismissal pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 1996)) and supported the dismissal of the motion with Potomac's policy and a deposition taken in the underlying action. Potomac argued in its motion that based on the deposition, Ace's alleged disposal of the ladder did not occur within the period covered by Potomac's policy and therefore, there was no duty to defend. The trial court granted Potomac's motion to dismiss and found no just reason to delay enforcement or appeal under Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)). Ace-Chicago, 304 Ill. App. 3d at 736-40.

In its analysis, the reviewing court discussed and cited Envirodyne, and Ainsworth Seed Co. The court stated:

> "[B]oth Ainsworth Seed Co., 194 Ill. App. 3d at 891-93, and
> Envirodyne Engineers, Inc., 122 Ill. App. 3d at 306-08, stand for
> the proposition that, if a court in a declaratory judgment action is
> permitted to make such factual determinations prior to the
> resolution of the underlying litigation, the court may consider
> extrinsic evidence bearing on the question of coverage and is not
> restricted only to a consideration of the allegations of the complaint
> in the underlying litigation and the terms of the insured's policy."
> Ace-Chicago, 304 Ill. App. 3d at 743.

Relying on this authority, the Ace-Chicago court considered the unrebutted deposition

submitted in the underlying action which stated that the subject ladder was still in Ace's possession after the expiration of Ace's policy with Potomac and not disposed of until after the Potomac policy term had ended. The court found that this determination did not estop Grossman from pursuing his underlying action nor did it adjudicate any question critical to Ace's liability. Ace-Chicago, 304 Ill. App. 3d at 743. Accordingly, the reviewing court affirmed the trial court's dismissal of Ace's third-party complaint against Potomac. Ace-Chicago, 304 Ill. App. 3d at 744.

The specific question of whether a trial court may consider a third-party complaint in the declaratory judgment action in addition to the underlying complaint and the terms of the subject insurance policy was considered in West Bend Mutual Insurance Co. v. Sundance Homes, Inc., 238 Ill. App. 3d 335 (1992). In that case, Ronald Bass, a carpenter employed by Lenny Szarek, Inc., a subcontractor, was injured at a construction site. Bass filed a complaint against the general contractor, Sundance Homes. At the time of the accident, Sundance was insured under a general liability policy by Great American Insurance Companies, and a West Bend policy purchased by Szarek which named Sundance as an additional insured. West Bend, 238 Ill. App. 3d at 336. West Bend declined to provide a defense to Sundance, "maintaining that the complaint contained no allegation imputing liability to Sundance as a result of the actions or conduct of Szarek." West Bend, 238 Ill. App. 3d at 336. West Bend filed a declaratory judgment action against Sundance and Bass, and Great American sought a declaration of rights between itself and West Bend. In granting Great American's motion for summary judgment, the trial court found that based on the Szarek policy, West Bend did have the duty to defend Sundance in the action. West Bend, 238 Ill. App. 3d at 336-37.

21

In determining whether West Bend had a duty to defend Sundance, the reviewing court considered Sundance's third-party complaint against Szarek for contribution as well as statements by coworkers. West Bend, 238 Ill. App. 3d at 337. The court found that this evidence "raise[d] the possibility that Szarek may also have been at fault." West Bend, 238 Ill. App. 3d at 337. The reviewing court found that the underlying complaint implied that other parties may have been in charge at the site, and this implication was developed in the third-party complaint. West Bend, 238 Ill. App. 3d at 337. The West Bend court concluded that the allegations in the underlying action were well within the coverage of the Szarek policy. West Bend, 238 Ill. App. 3d at 338.

Based on Envirodyne, West Bend, the other decisions discussed above as well as the general precedent governing insurance coverage and summary judgment proceedings, we conclude that consideration of a third-party complaint in determining a duty to defend is in line with the general rule that a trial court may consider evidence beyond the underlying complaint if in doing so the trial court does not determine an issue critical to the underlying action (see Envirodyne, 122 Ill. App. 3d at 308). The trial court should be able to consider all the relevant facts contained in the pleadings, including a third-party complaint, to determine whether there is a duty to defend. After all, the trial court " 'need not wear judicial blinders' and may look beyond the complaint at other evidence appropriate to a motion for summary judgment." West Bend, 238 Ill. App. 3d at 338; see also Envirodyne, 122 Ill. App. 3d at 305 ("To require the trial court to look solely to the complaint in the underlying action to determine coverage would make the declaratory proceeding little more than a useless exercise possessing no attendant benefit and would greatly diminish a declaratory actions's purpose of settling and fixing the rights of the

22

1-05-0403

parties").

If we consider both the Cogtella complaint and DePaul's third-party complaint along with the relevant language of the American Economy policy, we find the facts raise the potential for coverage due to Metrick's actions. The additional insured endorsement provides coverage for "liability arising out of 'your work' for that insured by or for you." In this case, that provision would mean liability arising out of Metrick's work for H&R.

The Cogtella complaint based part of its allegations against H&R on the negligent installation of the fluorescent lighting and the failure "to reasonably educate itself about current medical and scientific information and literature available regarding the dangers of exposure to UV emissions from fluorescent lights." DePaul's complaint asserts that Metrick was "in charge of" the installation of the fluorescent lighting and also alleges that Metrick "[f]ailed to reasonably educate itself regarding the potential danger or harm caused by exposure to ultraviolet ray emissions from florescent lights which they installed into buildings." Since the underlying complaint has alleged the possibility of negligence in the installation of the lighting and a failure on the parties to educate themselves about the dangers of fluorescent lighting and the third-party complaint alleges that Metrick was in charge of the installation, there is a potential for coverage arising out of Metrick's work for H&R. Further, our consideration of the third-party complaint which alleges that Metrick installed the lights does not determine an issue crucial to the Cogella lawsuit and we offer no opinion as to the ultimate finding of negligence.

Moreover, as in West Bend, the underlying complaint did not foreclose the possibility that there were additional subcontractors working on the site at the Goldblatt Building. According to

23

the Cogtella complaint, the City contracted with H&R as the architect and general contractor to design and construct the City's space in the Goldblatt Building. L&L was an electrical subcontractor on the project. DePaul's role was to review and approve of the construction plans throughout the project. The underlying complaint does not allege that these were the only entities involved in the construction of the City's space and the third-party complaint confirms that there was at least one other subcontractor on the site. Further, we note that the court in Envirodyne concluded that Envirodyne's role at the jobsite was as a consulting engineer and did not perform any functions other than those that were architectural or engineering in nature. In determining this question, the trial court considered the decision in Wheeler v. Aetna Casualty & Surety Co., 11 Ill. App. 3d 841, 854 (1973), in which the court took judicial notice "that employees of contractors and subcontractors place and operate hoists and that architects and their employees never do so." So too we believe we can take notice that general contractors hire subcontractors to perform different jobs under a construction project. Thus, it can be implied from the underlying complaint that other parties may have been involved in the project at the Goldblatt Building, specifically, the installation of lighting. This implication, as in West Bend, was developed in the third-party complaint.

American Economy relies on the Second District case of National Union Fire Insurance Co. v. R. Olson Construction Contractors, Inc., 329 Ill. App. 3d 228 (2002), and the subsequent case of L.J. Dodd Construction, Inc. v. Federated Mutual Insurance Co., 365 Ill. App. 3d 260

24

1-05-0403

(2006),[2] to support its argument that this court can only consider the allegations contained in the Cogtella complaint and not DePaul's third-party complaint. In National Union, the Second District held that a trial court may only look to the underlying complaint and the applicable policy provisions to determine whether there is a duty to defend. National Union, 329 Ill. App. 3d at 235.

In that case, National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union), filed a complaint for declaratory judgment against R. Olson Construction Contractors, Inc., d/b/a R. Olson Concrete Construction (Olson), and Leroy and Donna Schmidt. National Union sought a determination that it was not obligated to defend Olson in an action brought by the Schmidts for Leroy's injuries suffered while an employee of Meyer Material Company. National Union, 329 Ill. App. 3d at 230. National Union provided a comprehensive general liability policy to Meyer as the named insured and Olson was named in an endorsement as an additional insured. The endorsement, however, limited its coverage so that it would not cover Olson's liability arising from its own negligence or that of its employees. National Union, 329 Ill. App. 3d at 230. Olson was a concrete subcontractor for a construction project and hired Meyer to deliver concrete to the construction site. Schmidt was a driver for Meyer. National Union, 329 Ill. App. 3d at 230. Schmidt was injured at the site and filed a complaint against Olson and others, alleging various negligent acts or omissions by Olson caused Schmidt's injuries. Meyer

[2] We note that the decision in L.J. Dodd Construction, Inc. cited to the holding in National Union that the trial court cannot consider a third-party complaint in ruling on a summary judgment motion to determine the duty to defend, but that specific question was not raised on appeal. L.J. Dodd Construction, Inc., 365 Ill. App. 3d at 262-63.

25

1-05-0403

was not named as a defendant in Schmidt's complaint.  National Union, 329 Ill. App. 3d at 230.

Olson asked National Union to provide a defense in the Schmidt action, but National Union

declined.  Olson then filed a third-party complaint for contribution against Meyer, arguing that

Meyer was guilty of the negligent acts or omissions that proximately caused Schmidt's injuries.

National Union, 329 Ill. App. 3d at 230-31.  Specifically, Olson made nearly identical allegations

of negligence against Meyer as those that Schmidt pled against Olson.  National Union, 329 Ill.

App. 3d at 232-33.

First, we find the circumstances and allegations surrounding the third-party complaint in

National Union to be distinguishable from those in the instant case.  Notably, the endorsement in

Meyer's policy with National Union specifically excluded coverage resulting from Olson's own

negligence, and the court considered Olson's third-party complaint an attempt to avoid that

exclusion by placing all the negligence on Meyer.   In addition, we are not bound by decisions of

other appellate districts (see State Farm Fire & Casualty Co. v. Yapejian, 152 Ill. 2d 533, 539-40

(1992)), and we do not agree with the court's analysis in National Union that a trial court cannot

consider anything other than the underlying complaint and the policy provisions in determining a

duty to defend.

Our review of the record shows that in addition to the third-party complaint, true but

unpleaded facts should have alerted American Economy to the possibility that the Cogtella

complaint against H&R was potentially within the coverage of the Metrick policy.  First, we note

that American Economy has never disputed the fact that Metrick installed the lighting.  However,

in its motion for summary judgment, American Economy contended that the injuries alleged in the

26

Cogtella complaint arose from the selection of fluorescent lighting and that "there is no suggestion in her complaint that the manner of installation had any contribution whatsoever to her alleged injury." This statement is not supported by the Cogtella complaint. In her complaint, Cogtella alleged that "Defendants selected and installed fluorescent light fixtures and lights. However, they did not elect to shield or filter the lights with commercially available and reasonably priced diffusers or filters that would diffuse or reduce to a safe level the ultraviolet (UV) rays emitted by the fluorescent lights." Thus, Cogtella alleged that her injuries were caused by the selection as well as the installation of the fluorescent lighting without diffusers. Further, Metrick's subcontract for its work at the Goldblatt building is included in the record and provides that Metrick was responsible for the construction of the "complete operating electrical system."

Additionally, American Economy knew that Metrick installed the lighting and that the Cogtella lawsuit arose from the selection and installation of fluorescent lighting because it represented Metrick in the underlying case. Again, American Economy does not dispute this fact. In Associated Indemnity, the reviewing court found that true but unpleaded facts, including INA's representation of Robinson in the underlying action, should have apprised INA that the claim against Blond fell potentially within its policy's defined scope of coverage. Associated Indemnity, 68 Ill. App. 3d at 818-19. Based on its representation of Metrick in the underlying lawsuit and Metrick's subcontract, American Economy knew that Metrick installed the lighting at the Goldblatt building and that the Cogtella complaint alleged that her injuries were caused by the selection and installation of the fluorescent lighting without diffusers.

The additional insured endorsement provided coverage for liability arising out of Metrick's

27

work for H&R. As we previously stated, "arising out of" is to be liberally construed in favor of the insured and only a "but for" causation is required. See Maryland Casualty Co., 126 Ill. App. 3d at 154. It is uncontested that Metrick installed the fluorescent lighting. The Cogtella complaint against H&R alleged that she was injured because of the selection and installation of the fluorescent lighting without UV diffusers. Therefore, there is at least a possibility for coverage because "but for" Metrick's work, the installation of the fluorescent lighting without diffusers, Cogtella would not have been injured. These facts demonstrate American Economy had a duty to defend H&R under the additional insured endorsement afforded in its policy. We also note that consideration of these true but unpleaded facts as well as the third-party complaint does not determine any issue crucial to the Cogtella lawsuit.

Based on all of the foregoing, we find the trial court properly held that American Economy has a duty to defend and we affirm the decision of the circuit court of Cook County.

Affirmed.

J. GORDON and CAHILL, JJ., concur.